24 N.J. Super. 434 (1953)
94 A.2d 854
JACOB BORIS KOPITNIKOFF, ALSO KNOWN AS JACOB B. KOPP, PETITIONER-RESPONDENT,
v.
LOWENSTEIN BROS., INC., RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 22, 1952.
Decided February 10, 1953.
*435 Before Judges EASTWOOD, GOLDMANN and FRANCIS.
Mr. Robert E. Kiernan argued the cause for petitioner-respondent (Mr. Robert Gordon, attorney).
Mr. Isidor Kalisch argued the cause for respondent-appellant (Messrs. Kalisch and Kalisch, attorneys).
The opinion of the court was delivered by FRANCIS, J.C.C. (temporarily assigned).
This is a workmen's compensation action in which an award of 50% of total permanent disability was granted in the bureau and affirmed in the County Court. The employer again appeals.
The record discloses that the workman, Jacob Kopitnikoff, sustained two cerebral hemorrhages as the result of which he became totally disabled. In addition to an incapacitating paralysis he lost the power of speech. However, he remained able to utter just one word, "Da," which means "Yes" in Russian.
*436 At the time of the hearing Kopitnikoff was confined to the Newark Convalescent Home and arrangements were made for the taking of his testimony there. The deputy director, the attorneys for the parties, Mrs. Kopitnikoff, the disabled man's wife, and the official reporter appeared at the home for this purpose.
Prior to the examination the employer's attorney referred to Kopitnikoff's condition and his inability to speak, advised the deputy director that in the opinion of the employer's physicians the witness was mentally incompetent, and asked that the question of competency be determined as a preliminary matter. The deputy director indicated that the problem was one of fact and an effort was thereupon made to conduct an examination in English.
This examination having proved infeasible, another patient, Samuel Margolis, who spoke Russian, was pressed into service as an interpreter. Margolis had known Kopitnikoff for about a year and a half, during which time they had been patients in the same ward. He said he had no interest in the case and had never discussed it with the Kopitnikoffs.
Margolis further asserted that Kopitnikoff understood him when he talked to him. This understanding was indicated by a shaking of the head because "he can't talk."
An objection was interposed to the use of Margolis as an interpreter, but it was overruled.
As the examination began counsel instructed the interpreter to repeat the question to the witness in the manner in which it was asked. The interpreter then said:
"I have difficulty hearing, medicine dopes you up."
This statement was followed by further inquiry:
"MR. FOSS: Just a moment, one question. What do you mean when you just said, `Dope me up,' have you had medicine this morning?
MR. MARGOLIS: I have.
MR. FOSS: Do you know what it is?
The Interpreter: I don't know what it is.
*437 MR. FOSS: What effect does it have on you?
The Interpreter: It affects 
The DEPUTY DIRECTOR: The hearing. He has been telling me he can't hear well.
The Interpreter: It affects hearing.
MR. FOSS: In what way?
The Interpreter: Hearing, can't hear so good.
MR. FOSS: Anything else, does it affect you in any other way?
The Interpreter: Well, just the drums.
MR. FOSS: Does it affect your eyes?
The Interpreter: That's right.
MR. FOSS: How?
The Interpreter: I don't know, when I get medicine I feel all dizzy.
MR. FOSS: You feel dizzy?
The Interpreter: Yes.
MR. FOSS: Do you feel dizzy right now?
The Interpreter: No, not much.
The DEPUTY DIRECTOR: All right."
The questioning of Kopitnikoff proceeded by a series of leading questions, all susceptible of a "yes" answer or a negative shaking of the head. Five of these questions and answers are recited in the memorandum of the County Court as showing a compensable accident. They are:
"Q. Did you work for Lowenstein Brothers on October 11, 1948?

(Whereupon the petitioner's testimony was given through the interpreter)
A. He worked there.

* * * * * * * *
Q. You got hurt and went home?
A. (through the interpreter) Yes.

* * * * * * * *
Q. Did you stop working earlier that day because you got hurt?
The Petitioner: Da, Da.

* * * * * * * *
Q. When you got hurt, were you pushing something?

* * * * * * * *
The Deputy Director: He shakes his head in the affirmative.

* * * * * * * *
Q. Did the thing that you were pushing get stuck in the door?

* * * * * * * *
The Petitioner: Da.

* * * * * * * *
Q. After this thing got stuck in the door, did you feel pain in the right arm?
The Petitioner: Da, da, da."
*438 The examination was attended by much confusion and informality. Kopitnikoff would say "Da" at times and shake his head in the negative; he even shook his head, yes and no, in answer to the same question. In fact, on the very matters covered by the questions set forth, he answered in the negative as well as the affirmative. For example:
"Q. Did you, on October 11, 1948, push a truck with a load of material on it?
MR. FOSS: The man shakes his head, no.

* * * * * * * *
Q. Were you pushing any sort of a thing with wheels on that day, with a load of material on it?

* * * * * * * *
The Interpreter: He said he didn't.
The DEPUTY DIRECTOR: He shakes his head sideways.

* * * * * * * *
Q. Did you get hurt on the morning of October 11, 1948?

* * * * * * * *
Q. The same day, October 11, 1948?
MR. FOSS: The man shakes his head, no.
MR. GORDON: (one of petitioner's attorneys) I am sure he doesn't know what he is doing.
MR. FOSS: Now, he shakes his head yes. Again I ask that the Court observe this conduct. Now, I again point out and say that has been the advice of my physician, that the man does not orient, and does not understand.
The DEPUTY DIRECTOR: All right, continue.

* * * * * * * *
Q. Did you stop work earlier that day because you got hurt?

* * * * * * * *
The Interpreter: He went home in the morning, he got hurt, went home.

* * * * * * * *
Q. Did you stop working earlier that day because you got hurt?
The Petitioner: Da, Da.
The DEPUTY DIRECTOR: `Da,' he is saying.
The Interpreter: He said he went home at eleven o'clock.
MR. KIERNAN: (Petitioner's attorney) Did he say eleven o'clock? Off the record.
The Interpreter: Well, he didn't say eleven o'clock, he said in the morning when he got hurt he went home."
At one point in the examination the deputy director said:
"I think the interpreter poses his own questions. Ask him again."
*439 One further illustration of the conduct of the interpreter throws additional light on the propriety of his use as such:
"Q. Did you work in December of 1948 for another company?
* * * * * * * *
A. (Through the interpreter) No, he didn't work, that is the only place he worked.
* * * * * * * *
Q. Is that Mr. Herman Lowenstein that you are related to?
The Petitoner: Da, da, da, da.
(Interpreter again converses in Russian with the petitioner.)
The Petitioner: Da, da.
The Interpreter: He is a cousin."
Later during the course of the hearing two physicians were produced who had examined Kopitnikoff on behalf of the appellant, less than 2 1/2 months before the testimony was taken at the convalescent home. One, Dr. Asher Yaguda, said that the disabled man was not mentally competent to testify at that time, that his condition was "pretty stationary" and would show no further improvement. The other, Dr. Andrew C. Ruoff, asserted that Kopitnikoff "clearly did not comprehend what was going on" and that his condition would not improve but "will retrogress."
No medical evidence was offered on the workman's behalf to demonstrate his competency or even that when he used the Russian word for "yes," he had any rational comprehension of its use in relation to the questions put to him.
Subsequently, at the close of appellant's proof, when a motion was made to strike Kopitnikoff's testimony on the ground of his incompetency, the deputy director said:
"There is some doubt in my mind as to the probative value of his testimony, but I will deny the motion at this time."
The motion was not granted and in the determination and judgment it was said that, "Proof of a compensable accident can be made out of petitioner's testimony by a sifting thereof." However, the deputy director decided that such *440 an accident had been established by other proof in the case. On appeal, the County Court felt that Kopitnikoff's testimony was entitled to some weight and was worthy of consideration with all the other evidence in the case. We recognize that the exercise of discretion by the deputy director in permitting Margolis to act as interpreter ought to be viewed liberally in view of the unusual circumstances of the case. But its exercise must be examined with fair and reasonable regard to the substantial right of the employer to have the injured workman bear the burden of proof. And under all of the facts appearing in the record, we feel compelled to conclude that Margolis was not qualified to act as an interpreter, that his impartiality was questionable, and that his employment for that purpose constituted a mistaken use of discretion. We conclude further that the completely leading character of the questions put to Kopitnikoff, as well as the unreliable nature of his answers, render his testimony valueless as evidence. Thus, if no other evidence of a compensable accident appeared in the record, the judgment would have to be reversed.
There were no eye-witnesses to the accident. On the third day of the hearing it developed that the employee's attorney had served a notice to produce a written statement which the employer's representative had obtained from Kopitnikoff on November 10, 1948, one month after his first stroke, when he was only partially disabled and before he had lost the power of speech. The notice demanded the production also of a report of a medical examination made on the same day by a physician on behalf of respondent. These documents were produced and after some discussion and argument, employer's counsel, probably because of some admissions and facts contained therein which he deemed to be against Kopitnikoff's interest, consented to their use only on condition that they be marked in evidence as his adversary's exhibits. Accordingly this was done.
Among other things the statement recited that on October 11, 1948, at about ten A.M., Kopitnikoff was pushing a box *441 of rags through a doorway. As he was doing so the box hit the side of the door. He gave it another push and felt something snap in his right arm. Thereafter he had no grip in that hand or any feeling. He reported this to Mr. Lowenstein and was told to go home.
The statement sets forth also that it was read to Kopitnikoff who said it was correct, but he could not sign it because of inability to hold a pen.
The record discloses that on October 25, 1948 the employer filed Form C, which is designated "First Notice of Accident," saying:
"Employee claimed that while pushing a box of rags he felt a pain which resulted in a mild stroke."
The date of the accident was given as October 11, 1948 at 10 A.M. This form was evidential to establish that appellant had been notified of the accident and that the notice was prior to the time the statement was taken from the injured man.
According to the testimony of Mrs. Kopitnikoff, her husband was cheerful and seemingly in good health when he left for work on the morning of October 11, 1948. He had been working regularly, although he had been under the care of a Dr. Sidney B. Rawitz for high blood pressure for "a couple of years." He returned home about 10:30 A.M., appearing gray, nervous, dazed looking and excitable; he was not able to eat and when he tried to pick up a spoon it kept falling out of his right hand.
He continuously rubbed his right arm; his wife soaked the arm in epsom salts and put a hot water bag under it, "to bring a little life into it." She then put him to bed and about 6 P.M., with the aid of his son, he dressed and went to Dr. Rawitz' office. On returning he went to bed and remained there for three weeks.
The doctor found about 75% loss of power in the right arm, some slurring of speech, noticed that he walked slowly and swayed as he did so, and he made a diagnosis of a stroke.
*442 Kopitnikoff was put to bed and treated for three weeks, with very little improvement. At the end of that period he was not able to undertake his regular work. Dr. Rawitz never saw the man again; he gave up his practice in December 1948 and went to Florida.
Thereafter, although respondent did a little light, part-time work for another employer, his condition seemed to continue deteriorating until on April 14, 1949 he suffered the final stroke which resulted in his complete incapacity.
An expert medical witness, who had examined Kopitnikoff on January 17, 1951, fixed the permanent disability at 100%. In answer to a hypothetical question incorporating the facts recited in the statement referred to, he asserted that the strain of the employment incident was the producing cause of the stroke of October 11, 1948, as well as of the continued deterioration and final total disability.
On the other hand, the two doctors who had examined on behalf of respondent denied the existence of any such causal relation and maintained that the cerebral hemorrhages were the result of the ordinary progress of the disease.
It is apparent that to sustain the award reliance must be placed on the statement of petitioner which was received in evidence under the circumstances already detailed. Appellant contends that it is self-serving, hearsay and must be disregarded. We cannot agree.
When appellant's attorney produced the statement in response to the notice to do so, under the long established practice, he was entitled, if he wished, to insist that upon examination thereof by his adversary, the document should go in evidence as his adversary's exhibit. Ellison v. Cruser, 40 N.J.L. 444 (Sup. Ct. 1878); Decker v. George W. Smith & Co., 88 N.J.L. 630 (E. & A. 1915); Bancone v. Drovan, 11 N.J. Misc. 198 (Sup. Ct. 1933); Buckley v. Laidlaw, 14 N.J. Misc. 139 (Sup. Ct. 1936).
Appellant deliberately chose to insist that it be admitted as substantive evidence in the employee's case; no qualifications or restrictions were imposed. There was no suggestion *443 that the statement should be admitted because under the statute (R.S. 34:15-56) the rules of evidence are not binding on the deputy director. On the contrary, the language of counsel makes it obvious that he was demanding its admission as substantive proof. In this situation he cannot take advantage of the parts thereof which he deemed favorable to him and have the adverse parts disregarded as hearsay. Cf. Link v. Eastern Aircraft, 136 N.J.L. 540 (E. & A. 1948).
Even if the statement were wholly unfavorable to appellant, the election to have it received in evidence without qualification, justified its consideration as substantive proof of its contents.
Under the conditions presented by this record, the status of the statement was the same as if evidence condemned by the ordinary rules were admitted in evidence without objection at a trial in a common law court. In such case the improper evidence may be given its full probative effect.
The rule is stated in Wigmore on Evidence as follows:
"The initiative in excluding improper evidence is left entirely to the opponent,  so far at least as concerns his right to appeal on that ground to another tribunal. The judge may of his own motion deal with offered evidence; but for all subsequent purposes it must appear that the opponent invoked some rule of Evidence. A rule of Evidence not invoked is waived." (Vol. 1, sec. 18).
To like effect is a note in 126 A.L.R. 1130:
"It has been held almost universally (apparently only four or five jurisdictions taking a contrary view) that when hearsay testimony is admitted without objection it may properly be considered and given its natural probative effect as if it were in law admissible, the only question being with regard to how much weight should be given thereto."
See also: Katzman v. Budden, 125 N.J.L. 519 (Sup. Ct. 1940); Smith v. Del. & Atl. Tel. & Tel. Co., 63 N.J. Eq. 93 (Ch. 1902), affirmed 64 N.J. Eq. 770 (E. & A. 1902).
*444 In view of the somewhat different views of the deputy director and the County Court as to the proof which required the award, we have made an independent study of the record. That study has convinced us that Kopitnikoff suffered the incident described in his statement, that the cerebral hemorrhage of October 11, 1948 resulted therefrom, and finally, that the incident and the resultant hemorrhage constituted a compensable accident. Fox v. Plainfield, 10 N.J. Super. 464 (App. Div. 1950).
Accordingly the judgment is affirmed.