117 N.J. Super. 206 (1971)
284 A.2d 196
MARY MURPHY, WIDOW OF JAMES C. MURPHY, DECEASED, APPELLANT,
v.
DIVISION OF PENSIONS, CONSOLIDATED POLICE & FIREMEN'S PENSION FUND COMMISSION OF THE STATE OF NEW JERSEY, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 12, 1971.
Decided November 30, 1971.
*209 Before Judges CONFORD, MATTHEWS and FRITZ.
Mr. Larry L. Leifer argued the cause for appellant (Messrs. Friedman & D'Alessandro, attorneys).
Ms. Prudence H. Bisbee, Deputy Attorney General, argued the cause for respondent (Mr. George F. Kugler, Jr., Attorney General, attorney).
The opinion of the court was delivered by CONFORD, P.J.A.D.
Pursuant to N.J.S.A. 43:16-4, petitioner applied to the Consolidated Police and Firemen's Pension Fund Commission for benefits because of the asserted service-connected death of her husband, a member of the Fund. Following denial of her application petitioner filed a timely appeal for an administrative hearing. The hearing officer recommended that her application for accidental *210 death benefits be approved. The Commission, however, affirmed its original decision denying the application.
Decedent was employed by the Newark Police Department from November 25, 1941 until his death on April 15, 1968, his last day of active duty being April 14, 1968. His age at death was 59. Petitioner was her own principal witness. What follows is based on her testimony and certain stipulated matters. On the date of his death and for several years prior thereto decedent was assigned to the Violations Bureau of the Warrant Squad. His regular duties included indexing traffic tickets, compiling statistics and making court appearances in reference to them, etc. Decedent's regular hours of work were from 8 A.M. to 4 P.M. In the last few months prior to his death he had "pains and tightness in his chest," and his breathing was deep. He complained of the hard work and that he was tired. Without objection, petitioner was permitted to testify decedent had to pack and cart "drawers" filled with traffic tickets. He had in the early months of 1968 been packing such records for the year 1967. When he did that he came home and complained of being "very tired."
After being out for a time with an ankle injury decedent returned to work April 9, 1968. When he got to work he was told there was an emergency connected with the recent death of Martin Luther King, and he was required to work two hours extra. When he returned home he was very tired. Beginning April 10 he was required to work 12 hours a day, from 6 A.M. to 6 P.M. and did so until the last day he worked, April 14, 1968, which was Easter Sunday. During that period he became more and more tired and would look worse, have trouble breathing, and complain of chest pains. He also spoke of "tension" because of the uncertain "situation" in the city.
When decedent returned home April 14 he had no dinner, went straight to bed, arose for an hour after about three hours of rest, and then, after a snack, returned to bed. On arriving home he had been breathing very heavily, had *211 chest and shoulder pains, and was "white as a sheet." He was restless and tossing in bed. When he arose about 5:30 in the morning his pains were "very severe" and his shortness of breath had become worse. A little later petitioner and her son called the emergency squad, which administered oxygen and brought decedent to Martland Hospital where he was pronounced dead on arrival. The medical examiner's death certificate, offered in evidence, states as cause of death, "occlusive coronary arteriosclerosis."
On cross-examination petitioner was asked to describe the "lifting" decedent had to do. She said the drawers were heavy,
* * * he would say the drawers would jam sometimes, and one fellow would try to get it or another fellow, and they would have to carry them out and work on them and put them together. Now, for instance, as I say, then at this time of the year they are working on the tickets and packing them from the previous year, from the beginning of the year, maybe they were boxes like the size of that, you know, that's paper and that's heavy.
Asked also on cross-examination about decedent's condition from April 9 to the 14th she testified:
Q Did you notice a marked deterioration that occurred rapidly that you could see?
A I could see it.
Q And when did you see this change? When would you say he was in good health and when did he appear to you to be in rather poor health?
A I would say just prior to April the 9th, prior to the day he started working the longer hours he appeared in good health.
Petitioner offered in evidence a report of Dr. Emanuel Klosk, dated October 12, 1968, which was received without objection. This had apparently been supplied to petitioner's counsel and refers to an electrocardiogram of decedent (of unspecified date) showing "a severe degree of left Bundle Branch Block, probably due to coronary athrosclerosis."
*212 Also introduced in evidence without objection was a report to petitioner's counsel of Dr. Saul Lieb, dated April 24, 1969, and reading in part as follows:
I have reviewed the factual and medical material that you sent me in the above matter.

* * * * * * * *
The report of Dr. Klosk indicates that he examined Mr. Murphy on only one occasion and that an electrocardiogram showed a severe degree of left bundle branch block, probably due to coronary athrosclerosis. He does not indicate the date of this examination in his report, but I would assume from the statement that you have given me, that this was on March 23, 1968.
It can be assumed from this examination and from the fact that a few months before his death, that he started to note a shortness of breath and was very pale and would put his hands to his chest and breath deeply, that he was suffering from an advanced degree of arteriosclerotic heart disease several months before his death.
Assuming that he returned to work on April 9, 1968, and worked 10 hours that day, 12 hours the following day and the two days following, with appearance of heavy breathing and being pale and tired and then developing chest pain and finally sweating profusely, it would be my opinion that he had developed a marked degree of coronary insufficiency, superimposed upon his pre-existing arteriosclerotic heart disease in this period. His coronary insufficiency increased while he worked 12 hours on Easter Sunday and then progressed to a point where he expired from the result of his coronary insufficiency on April 15, 1968.
Assuming that he worked these long hours at the same time that he was exposed to the emotional stress and strain of emergency duty in his work, and at the same time had to pull heavy file drawers in his work, it would be my opinion that these circumstances of his work contributed appreciably to the production of this attack of acute coronary insufficiency which then superimposed upon his preexisting arteriosclerotic heart condition, caused his death.
There is causal relationship, therefore, between his work and his death.
In overruling the recommendation of the hearing officer and denying the petition for death benefits the Commission noted that "no medical testimony was offered at the hearing"; the report of Dr. Lieb "assumed facts not established by the evidence," i.e., the emotional stress and the pulling of heavy file drawers; the doctor's reliance was upon hearsay and the report of another doctor, and he was not subjected *213 to cross-examination; and that the absence of Dr. Klosk "creates an inference" his testimony would be unfavorable to petitioner. The Commission also said there was no "competent" evidence of exposure to emotional stress or emergency at work or of physical stress at work immediately prior to death.
As a conclusion of law the Commission found petitioner did not sustain her duty to show decedent "lost his life while on duty," within N.J.S.A. 43:16-4. He died as a result of coronary occlusion "while off duty." There was not adequate proof of causal relationship between longer hours of duty and death.
Insofar as the decision of the Pension Fund Commission and the supporting argument of the Attorney General depend upon the fact that decedent officer died at home, we do not agree that this, alone, precludes a determination that he "lost his life while on duty," within the intent of N.J.S.A. 43:16-4. In our judgment, if there is a material causal connection between work duty and death, decedent may be held to have died while on duty, even if he actually expired at home, within the reasoning of a number of cases analogizing the Workmen's Compensation Act to the subject enactment. Cf. Kochen v. Consolidated Police, etc., Pension Fund Comm., 71 N.J. Super. 463, 475 (App. Div. 1962); Fattore v. Police, etc. Retirement Syst. of N.J., 80 N.J. Super. 541, 549 (App. Div. 1963); but see Wagner v. Bd. of Trustees, Pub. Employees' Retirement Syst., 87 N.J. Super. 498, 503 (App. Div. 1965), certif. den. 45 N.J. 300 (1965); McGee v. Bd. of Trustees, Pub. Employees' Retirement Syst., 45 N.J. 576, 579 (1965).
In other words, we regard the principles set down in relation to workmen's compensation recovery in a heart-death case, in Dwyer v. Ford Motor Co., 36 N.J. 487 (1962), as applicable here. The situation may be different if the claim is only for permanent disability. Note the amendment of N.J.S.A. 43:16-2 by L. 1964, c. 242, § 2, to require a showing that the disability is "a direct result of a traumatic *214 event occurring while performing [the employee's] regular or assigned duties."[1]
On the merits of the issue of causal connection between decedent's work duties and his death from heart disease, which was resolved in the affirmative by the hearing officer and the opposite by the Commission, we are constrained to remand for a new hearing and findings and determination by the Commission.
The principal reason for our foregoing determination is the rejection by the Commission of Dr. Lieb's expert opinion in favor of the claimant, as reflected in his report, because it "assumed facts not established by the evidence," was based on hearsay and on the conclusions of another physician (the treating physician, who did not testify but whose report was adduced in evidence), and was not subject to cross-examination.
We gather from the Commission's reasons and findings that to the extent that the factual assumptions by Dr. Lieb were supported only by the testimony of the claimant, Mrs. Murphy, such testimony was regarded by the Commission as incompetent hearsay. But this was not, even if true, a valid reason for the automatic rejection of the evidence without weighing it for any inherent probative weight it might have on the issue to be decided.
In the first place, neither Mrs. Murphy's testimony nor Dr. Lieb's report was objected to at the hearing as hearsay or as based thereon. In such a case a quasi-judicial tribunal, particularly an administrative body, should give such evidence its natural probative weight and effect without regard to its technical incompetency. Kopitnikoff v. Lowenstein Bros., Inc., 24 N.J. Super. 434, 443 (App. Div. 1953), cited with approval in Aladits v. Simmons Co., 47 N.J. 115, 119 (1966) (both workmen's compensation cases).
*215 Secondly, such relevant statements of the decedent, to which Mrs. Murphy testified, as can fairly be regarded as having been made in good faith and upon his personal knowledge, if the circumstances indicated a probability of their trustworthiness, were admissible under Evidence Rule 63(32). This would certainly apply to the declarations as to decedent's physical symptoms after overtime workdays and possibly as to his accounts of what he had been doing on the job. We caution, however, that admissibility does not necessarily equate with substantial probative weight. For example, on the basis of what has been adduced thus far, the alleged statements concerning emotional strain because of the public tension attendant upon the then recent assassination of Martin Luther King would appear not to have warranted substantial weight on the main issue here in view of the inside and largely clerical nature of decedent's work.
Militating, along with Evidence Rule 63(32), to reject the approach of the Commission in this case, is the liberal attitude of our Supreme Court in workmen's compensation cases toward reliance upon trustworthy hearsay declarations of the workman where his lips are sealed by death when the hearing takes place. Aladits v. Simmons Co., 47 N.J. 115, 119 (1966).
It should be further observed that at the rehearing in this matter all evidence questions in the case will be controlled by the Administrative Procedure Act (effective September 1, 1969) which provides, N.J.S.A. 52:14B-10, that the parties are not bound by the rules of evidence and that all relevant evidence is admissible (with certain exceptions, not including any prohibition of hearsay).
The foregoing concerns itself principally with a rule relating to hearsay evidence in the administrative hearing. We turn to the rejection by the Commission of Dr. Lieb's report "on grounds that it is based on assumed factors not established by the evidence." If by this the Commission meant that the factors were not established by the evidence because the evidence was hearsay, what we have said heretofore *216 controls, and we disagree with the Commission. If, on the other hand, the Commission meant that the report assumed factors not established by any acceptable evidence, hearsay or otherwise, then its basis for a rejection of the claim is less vulnerable. Our concern that the latter of these alternatives, while not specifically articulated in the Commission's decision, might well be the fact, is generated by an apparent absence in the testimony of any evidence, hearsay or otherwise, except the conclusional statement of Mrs. Murphy, pertaining to the necessity for the decedent "to pull heavy file drawers in his work," a conjunctive factor relied upon by Dr. Lieb in his stated hypothesis in order to arrive at his conclusion with respect to causal relationship. It is important here to distinguish between that which is hearsay (and admissible for what it is worth, as above) and that which merely represents a conclusion of the witness from what she heard. In responding to inquiry as to whether the decedent had made any statements to her concerning what he had to do at work, she replied that he would "have to take these drawers filled with these here traffic tickets." She immediately added, "I don't know how big the drawers were, but they would be kind of heavy, * * *." Later, on specific inquiry seeking more detail, she responded by saying, "Well, actually, I couldn't, except that I mean as far as size or anything else, I couldn't tell you the size of it, but I know they were heavy, * * *." The analytical difficulty is at once apparent. If Mrs. Murphy's knowledge of the heaviness of the drawers represented a reiteration of something told to her by her husband, that information constitutes admissible hearsay for what it is worth pursuant to our discussion of that problem above. If, on the other hand, it represents her conclusion, from a description given by her husband to her short of a statement by him that the drawers were heavy, then that conclusion is not available as evidence, but should be left to the finder of fact to draw or not as he sees reasonably fit.
*217 Subjected to such analysis, it is to be seen that the true source of the testimony (as distinguished from evidence) with respect to the pulling of heavy drawers is pivotal with regard to the assumption by Dr. Lieb. Unless there is some qualification on the remand, there is no reason to believe that such an assumption is not necessary to his conclusion, since the assumption was conjunctively expressed. Accordingly, the matter of whether Dr. Lieb's report legally supports a finding of causal relationship  and it is the only evidence in the case with respect to causal relationship  depends upon the nature of the testimony, i.e., whether it is hearsay or conclusional.
Under these circumstances we are loath to determine the result upon this record, especially where the conclusions and determination of the hearing officer and the Commission were at odds. In our view this situation further justifies the remand which we are ordering.
We take this opportunity to suggest that while the formality of procedure is less demanding and the rules of evidence are less compelling, as we have pointed out above, in the administrative agency, there is a point at which confidence in the determination of the truth should not be subordinated to practicalities of the forum. For reasons which appear frequently in reported cases in determinations in the administrative agency such as that agency here concerned and the Division of Workmen's Compensation, the procedural rigor of the common law trial before a jury is neither necessary nor practical. But recognition of this fact should not be mistaken for a condonation of laxity of proofs in the procedure, at best, and carelessness at worst.
In the instant matter an insistence on better evidence seems not unreasonable. Specific proofs by others in the police department as to the weight and size of the cartons and of the timing of the carrying thereof in relation to the last few days of decedent's life, when he was working overtime, was presumably available, and should have been adduced.
*218 So far as using reports of physicians as evidence is concerned, the rejection of such reports by the Commission in its decision, without giving the claimant an opportunity to offer the oral testimony of the physician, is obviously unfair under the circumstances. The hearing officer had accepted the reports in evidence, having announced at the outset that he would not be guided by the strict rules of evidence, and the attorney for the Pension Fund failed to object thereto. Aside from those considerations, however, it is obviously preferable on such a close medical factual issue as that here presented to have the medical expert proof submitted through oral testimony, subject to cross-examination, rather than through oral reports.
The determination is reversed and the matter remanded for a new hearing and new findings, conclusions and determination by the Commission. We do not retain jurisdiction. No costs.
NOTES
[1] The scheme of N.J.S.A. 43:16-1 et seq. is superseded as to persons becoming police or firemen after the effective date of L. 1944, c. 255, creating the retirement system governed by N.J.S.A. 43:16A-1 et seq.