142 N.J. Super. 262 (1976)
361 A.2d 97
SILVIO MAGNANI, PETITIONER-APPELLANT,
v.
BOARD OF TRUSTEES, PUBLIC EMPLOYEES' RETIREMENT SYSTEM, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 25, 1976.
Decided June 10, 1976.
*263 Before Judges LYNCH, LARNER and HORN.
Mr. Joseph T. Duchak argued the cause for appellant (Messrs. Bennett & Daniel, attorneys; Mr. Cornelius W. Daniel, III on the brief).
Ms. Mary Catherine Cuff, Deputy Attorney General, argued the cause for respondent (Mr. William F. Hyland, Attorney General, attorney; Ms. Erminie L. Conley, Deputy Attorney General, of Counsel).
PER CURIAM.
Appellant Silvio Magnani presents this appeal from the decision of the Board of Trustees of the Public Employees' Retirement System (board) which, following *264 an administrative hearing before a hearing officer, denied claimant's application for retirement on an accidental disability allowance under N.J.S.A. 43:15A-43.
This statute delineates the terms on which such retirement may be granted by the board. The relevant portions thereof are as follows:
A member[1] * * * shall * * * be retired by the board of trustees, if said employee is permanently and totally disabled as a direct result of a traumatic event occurring during and as a result of the performance of his regular or assigned duties on an accidental disability allowance.

* * * * * * * *
Permanent and total disability resulting from a * * * musculo-skeletal condition which was not a direct result of a traumatic event occurring in the performance of duty shall be deemed an ordinary disability.
At the administrative hearing the parties entered into certain stipulations, including (a) Magnani was permanently and totally disabled for the performance of his regular job duties and (b) he was retired on ordinary disability by the board on August 1, 1973.[2]
Magnani commenced employment with the Department of Transportation of New Jersey in 1951. In 1961 and until his retirement his employment classification was truck driver. His regular duties included driving a truck assigned to him for the purpose of transporting work crews and materials, performing ordinary mechanical maintenance chores with respect to the truck, and supplementing the work force at jobsites.
*265 In 1957 he underwent a surgical procedure whereby a ruptured intervertebral disc was excised. According to his testimony at the administrative hearing, his back was asymptomatic until April 29, 1970 when the "traumatic event" allegedly occurred.[3] He had been operating the same truck since 1961. Over the years the tailgate, which weighed almost 200 pounds, had become warped. This made it more difficult to replace on each of the eight to fifteen times each year that it was normally removed for work requirements. On April 29, 1970 there was a shortage of manpower so that Magnani and a coworker, Swalagin, attempted to replace the tailgate alone instead of with a crew of three or more to perform that task. Magnani and Swalagin raised the gate to the required height. Then Magnani got into the truck to "align the pins." He pulled the gate in to line the holes up. The gate started to fall and as he was trying to hold it back to keep it from falling on Swalagin he felt a sudden sharp pain in the spine. He was unable to resume his employment for four or five weeks. His injury was diagnosed by his treating physician as a sprain.
The next incident occurred on March 13, 1972, when claimant again experienced pain in the same area of his back while lifting a six-gallon bucket of tar from the truck. He did not resume his employment duties for an interval of four *266 to five weeks and he was treated by a physician. The diagnosis was a strain of the back.
The next incident occurred on August 31, 1972, while he was using a pneumatic jackhammer weighing about 90 pounds. On this occasion he was using the jackhammer to break up some roadbed concrete. The jackhammer struck a reinforcing rod which caused claimant to fall down. He experienced sharp pain in the same area of his back. He remained away from his work for five to six weeks.
The final incident occurred on February 20, 1973. Working with a road crew which was filling fissures in a highway with a tar substance, claimant attempted to break a large piece of tar loose from the truck bed when he suffered a sharp pain in his back and collapsed to the pavement. He was treated by a physician for this injury, but he never returned to work again. On April 6, 1973 he filed an application for accidental disability retirement which, as already stated, was denied.
No physician testified at the hearing. Instead, by stipulation the undated report of Magnani's personal physician Dr. G.E. Troncaso and the report of Dr. Arthur E. Mittnacht dated June 1, 1973, who examined in behalf of the board, were introduced in evidence.
Dr. Troncaso, in response to the question of whether Magnani was permanently and totally disabled as a direct result of a traumatic event, stated that there was a degree of permanent disability following the laminectomy (in 1957) "and this disability has increased with each subsequent accident to the low back."
Dr. Mittnacht stated that the disability was directly related to the "accidents" beginning in 1957. Both physicians agreed in substance that there was degeneration of the spine dating from 1957.
We affirm the board's decision fundamentally because we agree with the finding of the hearing officer that Magnani did not suffer permanent and total disability as a *267 direct result of a traumatic event within the meaning of the quoted portion of the governing statute.
Although appellant refers to Shea v. Board of Trustees, 116 N.J. Super. 348 (App. Div. 1971); Hillman v. Bd. of Trustees, etc., 109 N.J. Super. 449 (App. Div. 1970), and Titman v. Bd. of Trustees, etc., 107 N.J. Super. 244 (App. Div. 1969), we need go no further than Cattani v. Bd. of Trustees, etc., 69 N.J. 578 (1976). Cattani was concerned with a claim for accidental disability retirement allowance asserted by a municipal fireman pursuant to N.J.S.A. 43:16A-7, which statute is substantially the same as N.J.S.A. 43:15A-43. The court upheld the administrative decision rejecting the claim on the ground that proof of unusual and excessive exertion by the claimant superimposed upon a preexisting cardiovascular condition was not a "traumatic event" within the meaning and intention of the statute. In that case, as in the case at bar, the claimant testified that the unusual and excessive exertion was due to a shortage of manpower.
The court held that the phrase "traumatic event" ordinarily comprehends a mishap or accident involving the application of some external force to the body or the violent exposure of the body to some external force. No such external force intervened in the instant case either with respect to the tailgate incident or any of the others which followed. During each of the episodes Magnani was performing his usual work in the usual manner. As stated in Cattani the use of the words "traumatic event" indicates that the Legislature did not intend that the workmen's compensation concept of "accident" should be applied to the governing pension statute. It said:
Where, as here, the disability is the end result of a preexisting cardiovascular condition, work effort alone whether unusual or excessive, cannot be considered a traumatic event, even though it may have aggravated or accelerated the preexisting disease. * * * [69 N.J. at 586]
*268 Referring again to the medical reports, both physicians ascribed the permanent and total disability to the series of back strains imposed upon an already degenerated spine. The proofs did not meet the required test of "traumatic event" from the standpoint of the application of external force.
For the foregoing reasons the decision of the Board is Affirmed.
NOTES
[1] The statute requires that an applicant be under 65 years of age and a member of the Public Employees' Retirement System (N.J.S.A. 43:15A-1 et seq.). Both of these qualifications were stipulated.
[2] As stated in Cattani v. Bd. of Trustees, Police & Firemen's Retirem. Sys., 69 N.J. 578 (1976), accidental disability retirement benefits are much more substantial than ordinary disability retirement benefits payable under N.J.S.A. 43:15A-42.
[3] Magnani's application for accidental disability retirement asserted that the "traumatic event" occurred on February 20, 1973 "while lifting a piece of RA joint material off body of truck * * *." As will be observed infra, this incident was the fourth one of a series of alleged events which caused pain in Magnani's back. The theory of the claimant at the administrative hearing was different than that before us. At the hearing the contention was that the permanent and total disability resulted from the series or any one of the series of "accidents that occurred, were all traumatic commencing with the original accident of April 29th, 1970." Before us the theory argued is that the "traumatic event" was the incident of April 29, 1970 and that the subsequent three back incidents were mere sequelae.