143 N.J. Super. 469 (1976)
363 A.2d 905
IN THE MATTER OF FRED F. SIGAFOOS, PETITIONER-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted June 7, 1976.
Decided June 25, 1976.
*470 Before Judges FRITZ, SEIDMAN and MILMED.
Messrs. Maida & Mountford, attorneys for appellant (Mr. William E. Mountford, Jr., on the brief).
Mr. William F. Hyland, Attorney General of New Jersey, attorney for respondent Board of Trustees (Mr. Stephen Skillman, Assistant Attorney General, of counsel; Ms. Prudence H. Bisbee, Deputy Attorney General, on the brief).
PER CURIAM.
In an unreported opinion we reversed a final determination of the Board of Trustees, Police and Firemen's Retirement System, denying petitioner's application for an accidental disability retirement pension under N.J.S.A. 43:16A-7, and granting, instead, a service and age retirement allowance (N.J.S.A. 43:16A-5). We held, contrary to the conclusions reached by the Board, that the incident which produced petitioner's alleged disability was a traumatic event as that term is used in the pertinent statute.[1]
The record on the nature and extent of the disability established that petitioner had suffered over a period of years *471 from a back condition. However, neither the hearing officer nor the Board made any finding following the hearing relative to the nature and extent of the disability suffered by petitioner. Accordingly, without retaining jurisdiction, we remanded for findings on that issue with a direction that if the Board should find that petitioner was totally and permanently disabled, then there should be further findings on the additional statutory requirements:
(A) Was such disability the direct result of the traumatic event of February 5, 1971?
(B) Was petitioner "physically incapacitated for the performance of his usual duty and of any other available duty in the department which his employer is willing to assign him?" N.J.S.A. 43:16A-7(1).
On the remand the Board found that petitioner was totally and permanently disabled; that he was physically incapacitated for the performance of his usual duty, and that there were no other available duties in the department. However, the Board found further that "Petitioner's permanent and total disability resulted from a musculo-skeletal condition which was not a direct result of a traumatic event occurring in the performance of duty." Petitioner then filed a second notice of appeal.
For a member of the retirement system to be entitled to an accidental disability retirement allowance under N.J.S.A. 43:16A-7, it must appear
* * * that the member is permanently and totally disabled as a direct result of a traumatic event occurring during and as the result of the performance of his regular or assigned duties * * *
The statute further provides that
Permanent and total disability resulting from a * * * musculo-skeletal condition which was not a direct result of a traumatic event occurring in the performance of duty shall be deemed an ordinary disability.
*472 In the recent case of Cattani v. Bd. of Trustees, Police & Firemen's Retirem. Sys., 69 N.J. 578 (1976), the court said:
* * * Where, as here, the disability is the end result of a preexisting cardiovascular condition, work effort alone whether unusual or excessive, cannot be considered a traumatic event[2], even though it may have aggravated or accelerated the preexisting disease. However, a basis for an accidental disability pension would exist if it were shown that the disability directly resulted from the combined effect of a traumatic event and a preexisting disease. [at 586; emphasis supplied]
Since we determined on the first appeal that the incident of February 1971 was a traumatic event, that issue is no longer before us. Our sole concern here is the correctness of the hearing officer's conclusion, adopted by the Board, that "Petitioner's permanent and total disability resulted from a musculo-skeletal condition which was not a direct result of a traumatic event occurring in the performance of duty." (Emphasis supplied) The hearing officer's concept was that the medical proofs did not "establish that the Petitioner's condition was the result of the incident relied upon; rather, it established that a preexisting condition of the Petitioner caused his disability." "The totality of the evidence available on this issue," he said, "would seem to reflect that Petitioner was suffering from a significant pre-existing musculo-skeletal condition * * *. The incident of February 5, 1971 was no *473 more than one of a series of episodes producing permanent and total disability." We disagree with the Board's conclusions.
There is no doubt that petitioner has suffered over a period of years from a back condition. It is equally clear that the condition was aggravated by the traumatic event in February 1971, resulting in a lumbar hemilaminectomy of the L5 level a year later.
It is true that on the remand we asked the Board to determine simply whether petitioner's disability was the "direct result of the traumatic event," but what we had in mind was not whether the event wholly brought about the disability; rather, it was whether there was a causal relationship between the two, taking into account the preexisting back condition. In fairness to the Board, we did not then have the benefit of Cattani, so that we did not put to the Board the more precise question of whether the disability directly resulted from the combined effect of the traumatic event and the preexisting disease.
Cattani makes it clear that disability which is the end result of a prior musculo-skeletal condition may not be the basis of an accidental disability pension, even though the disability is aggravated or accelerated by work effort alone. That is not the case here. Nor is this case one where the end result, i.e., the total and permanent disability, would have occurred when it did irrespective of the traumatic event.
The preponderant medical evidence here was that the incident aggravated petitioner's condition. Even the Medical Board of the Division of Pensions found that petitioner "injured his back when he was subjected to an unusual and unanticipated stress," and that he was permanently and totally disabled. We deem it of significance, notwithstanding the effort of the Board of Trustees to minimize its impact, that the Medical Board also listed as "Probable" the "cause and effect relationship of the described activity or incident to the present disability."
*474 Dr. Mittnacht, who testified below in behalf of the Board of Trustees, said that
This man in all probability had an intermittenly mildly protruding lumbar disc and there were a series of episodes from which he recovered spontaneously as can happen. And then on February 5th, 1971 there was a reoccurrence of this same condition but to a greater extent which was sufficient to produce disability at that time [Emphasis supplied]
The proofs here clearly show that petitioner's disability "directly resulted from the combined effect of a traumatic event and a preexisting disease." Cattani, supra. He is entitled to an accidental disability retirement allowance under N.J.S.A. 43:16A-7.
We reverse the determination of the Board of Trustees and remand with direction that petitioner be awarded an accidental disability retirement allowance. We do not retain jurisdiction.
NOTES
[1] Petitioner was a captain in the Trenton police department in charge of the city detective bureau. His duties were primarily supervisory. On February 5, 1971 a television set was needed as a monitor during the installation of a closed circuit TV system in the police station. Because of the absence of other personnel, petitioner undertook to search through the basement for a television set located there. Upon finding it he carried it up the basement stairs and, on reaching the landing, rested the set on his knee while opening the door. The set started to fall. As he grabbed it to keep it from falling down the steps petitioner twisted his back, resulting in an injury which was followed by extensive medical treatment, hospitalization and consequent disability.
[2] Cattani modified the third of the three-prong test of "traumatic event" contained in Hillman v. Bd. Trustees, Public Employees' Retirement Syst., 109 N.J. Super. 449, 460-461 (App. Div. 1970): that (a) the event be identifiable as to time and place, (b) the injury or disability resulted directly from it, and (c) the event was undesigned, unexpected and unusual. The term "traumatic event," said the court, would "ordinarily involve a mishap or accident involving the application of some kind of external force to the body or the violent exposure of the body to some external force." It was recognized, however, that "a traumatic event may possibly be found in some situations which do not literally fall within the external force or violence concept but still might be regarded as having traumatic origin."