160 N.J. Super. 382 (1978)
390 A.2d 131
IN THE MATTER OF HOWARD H. HILL, DECEASED.
EVELYN HILL, PETITIONER-APPELLANT,
v.
STATE OF NEW JERSEY, DEPARTMENT OF THE TREASURY, DIVISION OF PENSIONS, RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued June 6, 1978.
Decided June 29, 1978.
*383 Before Judges HALPERN, LARNER and KING.
Mr. Charles N. Miller argued the cause for appellant Evelyn Hill (Messrs. Miller & Pincus, attorneys).
Mr. Samuel J. Halpern, Deputy Attorney General, argued the cause for respondent State of New Jersey, Department of the Treasury, Division of Pension (Mr. John J. Degnan, Attorney General of New Jersey, attorney; Mr. William F. Hyland, former Attorney General of New Jersey, and Ms. Erminie L. Conley, Deputy Attorney General, of counsel).
The opinion of the court was delivered by LARNER, J.A.D.
Petitioner appeals from the denial by the Consolidated Police and Firemen's Pension Fund Commission (Commission) of death benefits claimed to be due under the provisions of N.J.S.A. 43:16-4(a) by virtue of the death of her husband while employed as a captain in the Police Department of the City of Linden. The pivotal issue is whether the widow of the deceased police captain is entitled to receive a pension of 50% of his average salary pursuant to N.J.S.A. 43:16-4(a) rather than a normal death pension of 25% pursuant to N.J.S.A. 43:16-3(a).
*384 After a plenary hearing the hearing officer of the Division of Pensions recommended a denial of the increased pension on a finding that the death "was not the direct result of the work effort" so as to constitute an "on duty" death under the applicable statute which provides for the increased pension when the member has "lost his life while on duty." The Commission adopted his findings and recommendation and denied the pension. Petitioner appeals from that determination.
A recitation of the facts relating to the medical condition of decedent and leading to his ultimate death are essential for the resolution of the legal question on appeal.
Hill, a member in good standing in the pension system, had been employed by the Police Department of the City of Linden since 1937 and at the time of the operative events was 60 years of age and had become a captain in that department. Prior to January 6, 1975 he was in good health and had no complaints referable to his chest or heart. On January 6, 1975 he was in charge of the department for the day shift. The evidence establishes, and the hearing officer found, that on that date decedent, in performance of his duties and in response to a call by a sergeant, went to the scene of a disturbance in order to supervise the dispersal of an unruly and disorderly crowd of approximately 500 persons who were attempting to force their way into the office of a ticket agency to obtain tickets for a rock concert.
While on the scene, Captain Hill collapsed as a result of a heart attack and was taken by ambulance to Rahway Hospital. Upon arrival he was in ventricular fibrillation, with his skin mottled and without measurable blood pressure. Dr. Melvin W. Lipowitz, a qualified internist, examined him and concluded that "the heart, for all intents and purposes, has stopped beating effectively," causing the cessation of a blood flow to the vital organs.
Emergency measures were taken including intracardiac administration of adrenalin, external cardiac massage and *385 electric shock therapy. The patient's heart rhythm was restored and his vital signs stabilized. His condition was diagnosed as an acute massive anterior wall infarction. After further treatment and examinations, and other episodes of disturbance of the heart rhythm, he was discharged on February 4, 1975 with a guarded prognosis. On the advice of Dr. Lipowitz he did not return to work.
After this hospitalization he engaged in none of his former activities in various sports, was severely depressed, "sick" and "ailing," refused to see people, and limited himself to short walks. On April 2, 1975, after sitting around all day he suffered a blackout while at dinner, accompanied by a rapid heart beat, which was followed by another hospitalization for a period of eight days. After conservative treatment and supervision he was discharged as improved.
Decedent continued to remain under his doctor's care thereafter, led a sedentary existence and did not return to work. Commencing in June or July 1975, however, he did venture forth on the family boat with the approval of his physician, without engaging in any activity pertaining to operation of the boat or fishing therefrom. On September 7, 1975 while sitting in a chair on the boat he collapsed and died. The death certificate designated the immediate cause of death as a sudden myocardial infarction due to arteriosclerotic heart disease for a period of nine months.
Dr. Lipowitz testified that the death-dealing attack of September 7 was related to the myocardial infarction of January 6, 1975. It was his opinion that decedent, who suffered an acute myocardial infarction together with ventricular fibrillation and heart failure, was thereby subject to a "greater risk of death in the near term after successful resuscitation from same," and that as a consequence the event of January 6 was a material factor contributing to his death on September 7.
He also explained that decedent, who had arteriosclerosis and probably hypertension prior to the first attack of January 6, 1975 (although asymptomatic), was predisposed to *386 the occurrence of an infarction. He opined that the stress involved in the quelling of the mob on the date of the occurrence precipitated the January 6 infarction which ultimately resulted in his death on September 7. His opinion was buttressed by the additional history that the decedent's usual duties were sedentary in nature and involved supervision of the police force from a desk, in contrast to the added stress of the extraordinary duties on January 6.
The only medical evidence introduced on behalf of the Division of Pensions consisted of two brief letters by Dr. Eckstein, a physician on the Pension Medical Board, which simply contained the conclusion that "based on the information available," the death was not "accidental" and was not related to "any unusual, excessive or unforeseen stress" and was therefore not eligible for "accidental death benefits."[1]
The hearing officer in his opinion omitted mention of Dr. Eckstein's conclusions in support of the findings, and did so properly, because the letters consisted of meaningless conclusions without support of history, diagnosis, examination or exegesis. Nevertheless, he concluded that the widow was not entitled to a 50% pension because death occurred eight months after the initial attack when decedent was under no physical stress or strain, and therefore did not satisfy the statutory requirement of death "while on duty." He reasoned that death must occur while decedent is "under the stress of his work activity or within reasonable proximity to it in order to establish a claim for death benefits." He also noted that, "Although there may have been a causal relationship between the decedent's death and the work event of January 6, 1975 which would satisfy the workmen's compensation law, this does not bring it within the purview of *387 the pension law," citing Shea v. Board of Trustees, 116 N.J. Super. 348 (App. Div. 1971).
Appellant urges a reversal in reliance upon the opinion of this court in Murphy v. Division of Pensions, 117 N.J. Super. 206 (App. Div. 1971). She particularly urges that the difference between the language of the controlling statute providing for death benefits (N.J.S.A. 43:16-4(a)) and the language in the permanent disability pension provision (N.J.S.A. 43:16-2, as amended by L. 1964, c. 242, § 2), is a significant factor which requires the application of principles of Workers' Compensation Act to the determination whether the death was caused by accident "while on duty." In Murphy, which involved death benefits under the same statute involved herein (N.J.S.A. 43:16-4(a)), the court stated:
In other words, we regard the principles set down in relation to workmen's compensation recovery in a heart-death case, in Dwyer v. Ford Motor Co., 36 N.J. 487 (1962), as applicable here. The situation may be different if the claim is only for permanent disability. Note the amendment of N.J.S.A. 43:16-2 by L. 1964, c. 242, § 2, to require a showing that the disability is "a direct result of a traumatic event occurring while performing [the employee's] regular or assigned duties." [at 213-214]
We conclude, however, that the foregoing statement applying workers' compensation principles is no longer viable as the appropriate legal standard for determining whether a widow is entitled to the increased benefits for death "while on duty" under the Consolidated Police and Firemen's Pension Fund Act (N.J.S.A. 43:16-1 et seq.). The thesis expressed in Murphy was criticized and rejected by the Supreme Court in Russo v. Teachers' Pension and Annuity Fund, 62 N.J. 142 (1973). Although Russo dealt with a teacher's pension under N.J.S.A. 18A:66-1 et seq., Chief Justice Weintraub noted an analogous difference in that statutory language, whereby a teacher's disability pension was made dependent upon permanent and total disability "as a direct result of a traumatic event occurring during *388 and as a result of the performance of his regular or assigned duties" (N.J.S.A. 18A:66-39(c)), whereas a death benefit pension under that act was available where the death was the result of "an accident met in the actual performance of duty at some definite time and place." N.J.S.A. 18A:66-46.
The Chief Justice reviewed the pension provisions of various acts and found that the Legislature amended the disability retirement section of the Teachers' Pension Act in 1966 (c. 66, § 2) to overcome the impact of several judicial opinions applying workers' compensation principles, but failed to adopt a parallel amendment to the death benefit provision. He dealt with this difference and the Murphy decision in the following excerpt:
This resume' demonstrates effectively that the Legislature did not subscribe to the theme that the concept of "accident" which Ciuba [Ciuba v. Irvington Varnish & Insulator Co., 27 N.J. 127] and Dwyer found in the Workmen's Compensation Act should apply to a pension statute. But the point made that the amendments to which we have referred related to provisions for disability retirement and were not duplicated in the provisions dealing with death benefits, from which omission it is argued the Legislature must have intended a different concept of "accident" whenever death ensues. Reliance is placed on Murphy v. Division of Pensions, 117 N.J. Super. 206 (App. Div. 1971), which involved a death benefits claim under N.J.S.A. 43:16-4 of the Consolidated Police and Firemen's Pension Fund statute which referred to the loss of life "while on duty." The accidental disability retirement provision, N.J.S.A. 43:16-2, had, in like terms, provided for benefits for permanent disability "while on duty," which provision was amended by L. 1964, c. 242, § 2, to require that the disability of the employee be "a direct result of a traumatic event occurring while performing his regular or assigned duties." In Murphy, the Appellate Division said the compensation principles of Ciuba and Dwyer applied, adding that "The situation may be different if the claim is only for permanent disability" (117 N.J. Super. pp. 213-214), and referring to the amendment of N.J.S.A. 43:16-2, just mentioned. In the case now before us, the Appellate Division cited Murphy to support its statement that the compensation cases controlled a death claim.
Of course the concept embraced in Ciuba and reaffirmed in Dwyer, that the "accident" was the unexpected injury as distinguished from some external event, applies in workmen's compensation matters whether the claim is for disability benefits or for death benefits. *389 Murphy suggests the Legislature was content with that reading of a pension statute insofar as death benefits are concerned but not with respect to disability retirement benefits. The result would be an apparent novelty, two concepts of an accident in a single statute, one for disability retirement and the other in cases of death. We of course know that no such distinction was intended in the pension statutes as originally enacted, for the same language applied whether the claim was for disability or for death. Conceivably the Legislature might adopt different criteria of an "accident" for pension purposes depending upon whether the employee dies, but one would expect a clear articulation of an intent thus to depart from the original statutory scheme. The more natural supposition is that the Legislature intended the concept of "accident" to be the same for both purposes and assumed that an amendment rejecting a judicial view of "accident" for disability retirement purposes would communicate to the judiciary the same disapproval with respect to a case involving death benefits. [at 151-152; emphasis supplied]
We are satisfied that the foregoing excerpt from the Supreme Court opinion in Russo rejects the contrary view in Murphy and effectively eliminates the precedential value of that portion of the Murphy opinion. Our reading of Russo and Cattani v. Board of Trustees, 69 N.J. 578 (1976), leads to the conclusion that the Legislature intended that the proof of entitlement to a pension under the Consolidated Police and Firemen's Pension Fund Act for work-connected injuries resulting in either permanent disability or death, is more difficult and rigorous than that required in a workers' compensation disability or dependency claim. The cases predating the amendments to the several pension acts, which applied the workers' compensation criteria, are no longer viable as to both disability and death claims arising out of traumatic events. See Russo, supra, 62 N.J. at 153; Cattani, supra, 69 N.J. at 585.
It follows that the petitioner herein is not entitled to a death benefits pension unless the proofs establish the occurrence while decedent was on duty of a "traumatic event" which was the direct cause of death. The definition of an "accident" within the ambit of workers' compensation cases such as Ciubu v. Irvington Varnish & Insulator Co., 27 N.J. *390 127 (1958), and Dwyer v. Ford Motor Co., 36 N.J. 487 (1962), cannot serve as the guiding standard in a case arising under the applicable pension statute herein, just as it has been discarded as a controlling principle in other pension cases on the basis of the legislative amendments discussed earlier in this opinion.
Chief Justice Weintraub observed in Russo, "We do not know why the verbiage selected in 1971 was not the same used in the 1966 amendment of the accidental disability retirement provision." 62 N.J. at 153. To borrow the phrase, we do not know why the verbiage in the death benefits provision of N.J.S.A. 43:16-4(a) was not amended in 1964 to accord with the amended language in the disability pension section of N.J.S.A. 43:16-2. Perhaps it was a mere inadvertence. See Conklin v. East Orange, 73 N.J. 198, 204 (1977). Nevertheless, following Russo we conclude that the failure of the Legislature to select the traditional language of the Workers' Compensation Act making injuries and death compensable when they occur because of an "accident arising out of and in the course of employment" is indicative of a contrary intent. The legislation with respect to pensions requires more than proof of a death induced by impact of an ordinary or extraordinary work effort which materially contributed to the precipitation, aggravation or acceleration of an underlying disease. It requires a traumatic event at a particular time and place which precipitates the injury and the ultimate death.
As the Supreme Court held in Cattani, supra, the legislative criterion of a "traumatic event" is not satisfied by proof of disability or death "resulting from the aggravation or acceleration of a preexisting disease even though unusual or excessive work effort is involved." 69 N.J. at 585. "The phrase `traumatic event' would ordinarily involve a mishap or accident involving the application of some kind of external force to the body or the violent exposure of the body to some external force." Id. at 586.
*391 Although the court noted that the foregoing definition may not be all-inclusive, nevertheless it concluded that, "Where, as here, the disability is the end result of a preexisting cardio-vascular condition, work effort alone whether unusual or excessive, cannot be considered a traumatic event, even though it may have aggravated or accelerated the preexisting disease." Id. at 586. See also, In re Sigafoos, 143 N.J. Super. 469 (App. Div.), certif. den. 72 N.J. 458 (1976); Magnani v. Board of Trustees, 142 N.J. Super. 262 (App. Div. 1976).
Applying these legal principles to the facts of this case, it is manifest that there was no evidence of a traumatic event which would support the grant of a pension. The collapse of the decedent with a severe infarction at the scene of the disturbance was but the manifestation of the medical condition which produced the disability. There was no evidence whatever of any event or occurrence which produced the collapse other than the stress or strain of the decedent's work effort at the time. Such work effort, although unusual and excessive, was not so "unexpected" as to supply the requisite traumatic event required by the pension statutes. See Shea v. Board of Trustees, supra, 116 N.J. Super. 348; Hillman v. Board of Trustees, 109 N.J. Super. 449, 459-461 (App. Div. 1970).
It is also evident from the medical testimony that the work effort did not in itself produce the heart attack, but that the unusual strain superimposed upon a preexisting condition of arteriosclerosis and hypertension precipitated the attack. In the absence of a distinct traumatic event which is a direct cause of death there can be no statutory pension under N.J.S.A. 43:16-4(a). Although proof by way of aggravation or precipitation of a preexisting condition suffices for workers' compensation, it is insufficient under pension statutes which require not only that there be a traumatic event but also that the disability or death be a direct result thereof.
*392 In Titman v. Board of Trustees, 107 N.J. Super. 244 (App. Div. 1969), this court affirmed a denial of a disability pension under the Teachers Pension and Annuity Fund Act. The opinion states:
We further conclude that petitioner's ultimate total disability was not a "direct" result of the 1960 incident, as the act requires it to be. The word "direct" connotes relative freedom from remoteness, whether in terms of time, intervention of other contributive causes or the like, or a combination of such factors. The criterion cannot be reduced to a formula which will solve all cases. The matter is one essentially of degree. [at 247]
The Commission, in adopting the hearing officer's report herein, found that the expiration of eight months between the first heart attack and death was too remote from the stress of the work activity to qualify as a death "while on duty" under the literal language of N.J.S.A. 43:16-4. Whether we view this statutory criterion in the term of death "while on duty" or the parallel provision of N.J.S.A. 43:16-2 "a direct result of a traumatic event," the essential question is whether there is a material causal connection between the traumatic event and death. As in Murphy v. Division of Pensions, supra, 117 N.J. Super. at 213, we reiterate this as the appropriate test of compliance with the statutory criterion relating to causal connection and agree with the petitioner that death at the time and place of the performance of duty is not a sine qua non of a pension entitlement.
However, in view of the underpinning of this opinion, founded on the absence of a traumatic event, it becomes unnecessary to reach the question of the propriety of the factual determination below on this issue of causation.
In view of the foregoing, the determination of the Commission is affirmed.
NOTES
[1] Dr. Eckstein pointed out that he lacked any information as to what decedent was doing at the time of his fatal attack or during the eight-month period prior thereto, or any documentary evidence that there was an unusual or emotional stress when he suffered his first attack.