675 A.2d 673 .

ESTATE OF ANTHONY TERMINELLI, PETITIONER–APPEL-
LANT, v. POLICE & FIREMEN'S RETIREMENT SYSTEM,
DIVISION OF PENSIONS, RESPONDENT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued February 28, 1996—Decided May 14, 1996.

Humphreys, J.A.D., filed dissenting opinion.

Before Judges LANDAU, KLEINER and HUMPHREYS.

*Leon B. Savetsky* argued the cause for appellant (*Locke & Correia*, attorneys; *Mr. Savetsky*, of counsel and on the brief).

*Sue Kleinberg*, Deputy Attorney General, argued the cause for respondent (*Deborah T. Portiz*, Attorney General, attorney; *Joseph L. Yannotti*, Assistant Attorney General, of counsel and *Ms. Kleinberg*, on the brief).

The opinion of the court was delivered by

LANDAU, J.A.D.

Anthony Terminelli was the Police Chief of the Borough of Washington, supervising its small twelve-member force. He died on February 18, 1992, after collapsing at police headquarters. The death certificate listed cardiac arrest due to coronary artery disease as the cause of death.

Chief Terminelli was a member of the Police and Fireman's Retirement System (PFRS). His estate applied for accidental death benefits, contending that death was the direct result of a traumatic event that occurred on February 3, 1992, during the actual performance of police duties. The application was denied by the Board of Trustees of PFRS (Board), which did not accept this contention.

Following administrative appeal, an Administrative Law Judge issued an initial decision supporting the PFRS denial of accidental death benefits. It was adopted by the Board, and the Estate appealed. We affirm.

It is not disputed that Chief Terminelli suffered a heart attack in 1986 for which he was hospitalized and underwent cardiac catheterization. Various cardiac medications were prescribed

thereafter. He returned to work on a part-time basis three months after discharge from the hospital, gradually increasing his hours. By February 3, 1992, Chief Terminelli was working a forty-hour week, free of pain or discomfort, walking three miles a day and apparently in good health, according to his wife.

On February 3, 1992, while on patrol car duty, he apprehended a burglary suspect after a vigorous foot chase that culminated when he tackled and subdued the suspect. Another senior officer testified that when he responded to a request for back-up, Chief Terminelli was clutching his chest and gasping for breath. The Chief thought he might have been kicked in the chest or fallen against a tree during the tackle. According to the same witness and Mrs. Terminelli, the Chief's capacity, vigor, and disposition appeared to have deteriorated from that time until his fatal attack on February 18.

The Administrative Law Judge considered the expert opinion testimony of the Estate's witness, Dr. Bernard Eisenstein, who concluded that Chief Terminelli's fatal acute myocardial infarction:

> *was a result of the physical exertion on February 3rd,* producing an acute coronary insufficiency state, known as unstable angina, with bridging symptoms and continued coronary insufficiency, until an acute myocardial infarction resulted on—the 18th of February.
>
> So, therefore, the acute myocardial infarction was due to the traumatic event of February 3rd.

[ (Emphasis added).]

While Dr. Eisenstein opined that Chief Terminelli's death was the direct result of pursuing, tackling, and subduing the suspect, he also unequivocally confirmed that death was due to coronary artery disease as stated in the death certificate.

The ALJ recognized the clarifying, but restrictive, judicial interpretations given to the phrase "traumatic event" as used in *N.J.S.A.* 43:16A–7(1). In *Kane v. Board of Trustees,* 100 *N.J.* 651, 663, 498 *A.*2d 1252 (1985), the Court said:

> We think it consonant with the legislative intent to characterize a traumatic event as one that arises in cases in which a worker involuntarily meets with a physical object or some other external matter and is victim of a great rush of force or power that he himself did not bring into motion. As *Cattani* makes clear, the

focus of inquiry is on the event itself rather than the injury. The force or power must originate from sources other than the injured party. Hence, to be eligible for accidental disability retirement allowance, a worker must demonstrate (1) that his injuries were not induced by the stress or strain of the normal work effort; (2) that he met involuntarily with the object or matter that was the source of the harm; and (3) that the source of injury itself was a great rush of force or uncontrollable power.

[ (Citation omitted).]

It has long been judicially recognized that the concept of "accident" for purposes of death claims under *N.J.S.A.* 43:16A–10 must be the same as that for disability retirement, notwithstanding absence of the words "traumatic event" from the death benefits statute. *Russo v. Teachers' Pension & Annuity Fund,* 62 *N.J.* 142, 152, 299 *A.*2d 697 (1973); *In re Hill,* 160 *N.J.Super.* 382, 388–89, 390 *A.*2d 131 (App.Div.1978).

The ALJ concluded that occurrence of a "traumatic event" had not been established, making the factual findings: "[a]lthough the chief may have been kicked in the chest by the suspect, this has not been proven by petitioner; indeed even the chief was uncertain." [1] Additionally, the ALJ found that, unlike the situation in *Petrucelli v. Board of Trustees,* 211 *N.J.Super.* 280, 511 *A.*2d 735 (App.Div.1986), Chief Terminelli had a preexisting *symptomatic* coronary artery disease, which was aggravated by the February 3 incident.

These findings of the ALJ find support in the record. Adopting these findings, the Board reasonably could have determined that the three conjunctively-expressed prongs of *Kane* were not satisfied. Even if injury sustained during violent physical apprehension of a suspect is not necessarily deemed part of the normal work effort for a law enforcement officer, *see Gable v.*

---

[1] Although not integral to our decision, we take notice that the classic symptoms of a heart attack are, "[c]rushing pain in the center of the chest, accompanied by difficult breathing, sweating, nausea, or a feeling of faintness." Lawrence Deckelbaum, M.D., *Heart Attacks and Coronary Artery Disease, in Yale University School of Medicine Heart Book* 133, 137 (Barry L. Zaret, M.D., et al. eds., 1992).

*Board of Trustees,* 115 *N.J.* 212, 557 *A.*2d 1012 (1989), and the "involuntary" prong is read narrowly for policy reasons, *id.* at 224, 557 *A.*2d 1012, the evidence in this case falls short of compelling a conclusion that application of an external great rush of force, which Chief Terminelli did not himself bring into motion, caused his death. *See Kane, supra,* 100 *N.J.* at 662, 498 *A.*2d 1252; *Cattani v. Board of Trustees,* 69 *N.J.* 578, 586, 355 *A.*2d 625 (1976). The legislative criterion is not satisfied by proof of disability or death "resulting from the aggravation or acceleration of a preexisting disease even though unusual or excessive work effort is involved." *Cattani, supra,* 69 *N.J.* at 585, 355 *A.*2d 625; *see also Hill, supra,* 160 *N.J.Super.* at 390, 390 *A.*2d 131.

 Neither the Board nor we are free to construe liberally the death benefits statute. *See Mazza v. Board of Trustees,* 143 *N.J.* 22, 24, 25, 667 *A.*2d 1052 (1995). The Board's decision is supported by sufficient credible evidence on the record as a whole and we cannot say that, in endeavoring to follow the law and legislative policy, it clearly erred or reached an unreasonable conclusion. *See id.* at 25, 667 *A.*2d 1052.

HUMPHREYS, J.A.D., dissenting.

The Pension Board denied accidental death benefits to the family of Chief of Police Anthony J. Terminelli on the ground the Chief's death was not the direct result of a traumatic event. The Board's decision is directly contrary to the undisputed medical testimony. The decision is also in sharp conflict with the unanimous opinion of the New Jersey Supreme Court in *Gable v. Board of Trustees,* 115 *N.J.* 212, 557 *A.*2d 1012 (1989). I would reverse.

I

The Chief chased, tackled and subdued a person suspected of burglarizing a home. During the struggle, he was either kicked in the chest or struck a tree. A police officer arrived and saw the

Chief clutching his chest and gasping for breath. Two weeks later the Chief died. He was forty-nine years of age. The only medical witness at the hearing before the ALJ testified that the Chief's death was the direct result of his encounter with the burglary suspect.

Accidental death or disability benefits are granted if the incident was a "traumatic event" and the injury was a "direct result." *Gable v. Board of Trustees, supra,* 115 *N.J.* at 219, 557 *A.*2d 1012; *Russo v. Teachers' Pension & Annuity Fund,* 62 *N.J.* 142, 152, 299 *A.*2d 697 (1973) (concept of "accident" is the same for both disability and death). *See also N.J.S.A.* 43:16A–10 and 43:16A–7.

A traumatic event is an "elusive concept." *Gable, supra,* 115 *N.J.* at 215, 557 *A.*2d 1012. The injured employee "must demonstrate: (1) that his or her injuries were not induced by the stress or strain of the normal work effort; (2) that he or she met involuntarily with the object or matter that was the source of the harm; and (3) that the source of the injury itself was a great rush of force or uncontrollable power." *Id.* at 221, 557 *A.*2d 1012; *Mazza v. Board of Trustees,* 143 *N.J.* 22, 24, 667 *A.*2d 1052 (1995) (severe twisting injury without an impact could be found by the Board not to be a traumatic event); *Kane v. Board of Trustees,* 100 *N.J.* 651, 663, 498 *A.*2d 1252 (1985).

In *Gable, supra,* 115 *N.J.* at 215–216, 557 *A.*2d 1012, the officers were injured in altercations with prisoners. The Court held that the evidence met the above three criteria. *Id.* at 222, 557 *A.*2d 1012. The incidents, Justice Garibaldi said, were not "mere 'scuffles' "; the officers were the victims of "violent physical assaults." *Id.* at 223, 557 *A.*2d 1012.

In *Gable,* the Board unsuccessfully argued, as it has successfully decided here, that the injuries were part of the stresses and strains of the employee's normal work effort. *Id.* at 217, 557 *A.*2d 1012. The Supreme Court disagreed and said that it was "not part of the stress or strain of the 'normal' work effort of a corrections officer to be violently assaulted by an inmate. Corrections officers are not hired to be punching bags." *Id.* at 224, 557

A.2d 1012. The Court said that "the corrections officers clearly sustained injuries as a result of 'a great rush of force or uncontrollable power.' Each incident was caused by a violent external force—the actions of an unruly inmate." *Id.* at 222, 557 *A.*2d 1012.

The Court said further:

> We do not want corrections officers to shy away from subduing unruly inmates. *Nor do we want to discourage police officers from chasing criminal suspects.* If law enforcement officers act cautiously, they will not get injured—but they will also not be doing their jobs properly, *and the public will not be as well protected.* [*Id.* at 224, 557 *A.*2d 1012 (emphasis added).]

The Board's decision that this was not a traumatic event is directly contrary to the public policy enunciated by the Supreme Court in *Gable.* The Board's decision discourages police officers from "chasing" criminals who burglarize homes; even worse it discourages police officers from struggling with and subduing these criminals. In the language of Justice Garibaldi in *Gable,* the Board's decision will foster cautious police officers who will not do their job properly; the final result will be a public who are denied the protection from criminal attack promised by their government. *State v. Davis,* 50 *N.J.* 16, 22, 231 *A.*2d 793 (1967), *cert. denied,* 389 *U.S.* 1054, 88 *S.Ct.* 805, 19 *L.Ed.*2d 852 (1968) (government's primary mission is "its promise that the individual shall be secure from attack upon his person and his things"); *State v. Bisaccia,* 58 *N.J.* 586, 590, 279 *A.*2d 675 (1971) (the reason we have government is to secure the first right of the individual which is to be protected from attack); *State v. McKnight,* 52 *N.J.* 35, 52, 243 *A.*2d 240 (1968) ("the first right of the individual, [is] the right to be protected from criminal attack"); *State v. Boykins,* 50 *N.J.* 73, 81, 232 *A.*2d 141 (1967) ("Pre-eminent in the galaxy of values is the right of the individual to live free from criminal attack in his home, his work, and the streets.... That primary individual right demands that government be equal to the reason for its being— the protection of the individual citizen....").

My colleagues conclude that the Board is "endeavoring to follow the law and legislative policy" and did not "clearly" err or reach "an unreasonable conclusion." Majority opinion at 235, 675 *A.*2d

at 675. I disagree. Neither the Board nor the ALJ followed, discussed or even cited the New Jersey Supreme Court decision in *Gable* which clearly and firmly stated the law and policy applicable to the facts in this case. The Board is surely not unaware of *Gable.* The Board was reversed by us in *Gable,* and the Supreme Court upheld that reversal. We are under no obligation to defer to unsound administrative decisions on legal questions, especially those which ignore or flout decisions of the New Jersey Supreme Court. *See In re Adoption of N.J.A.C. 7:26B,* 128 *N.J.* 442, 450, 608 *A.*2d 288 (1992); *Greenwood v. State Police Training Center,* 127 *N.J.* 500, 513, 606 *A.*2d 336 (1992). The Board's decision that what happened to Chief Terminelli was not a traumatic event is manifestly erroneous and should be reversed.

## II

The ALJ also found that the Chief's death did not directly result from his violent encounter with the burglary suspect. The ALJ said that the "incident merely aggravated the decedent's preexisting symptomatic coronary artery disease." The Board adopted this and the other findings of the ALJ. This finding has no support in the record and is directly contrary to the undisputed medical evidence.

Dr. Bernard Eisenstein is a physician, Board Certified in internal medicine with a subspecialty in cardiac pulmonary disease. He testified that the acute myocardial infarction from which the Chief died was the direct result of the Chief's pursuing and battling with the burglary suspect. This traumatic event, the doctor testified, caused an acute coronary insufficiency known as unstable angina which developed into an acute myocardial infarction resulting in the Chief's death two weeks later.

The doctor agreed with the statement on the death certificate that the cause of death was coronary artery disease. However, the doctor also testified unequivocally that the Chief's death was the "direct result" of the Chief's struggle with the burglary suspect. Neither the doctor's testimony nor any other evidence

suggest any aggravation of a preexisting condition. On the contrary, the evidence was that the Chief was in excellent health. He had recovered from a heart attack of six years ago and had returned to work full time. He worked a ten hour day and regularly worked on his day off. He had stopped smoking. He never complained about chest pain or discomfort. He walked three miles a day and visited his cardiologist only once a year.

The doctor's testimony was uncontradicted. The Deputy Attorney General at the hearing accepted the doctor's medical testimony as accurate or substantially accurate. The Deputy Attorney General told the ALJ that the State's medical expert "agrees substantially" with Dr. Eisenstein and therefore would not appear. Dr. Eisenstein's testimony was corroborated by the Chief's widow and another witness who testified as to the Chief's rapidly deteriorating condition in the two weeks after the incident. No witnesses were presented on behalf of the respondent.

In view of the above uncontradicted and accepted testimony, the finding that the violent encounter "merely aggravated" a preexisting condition is totally without foundation. Moreover, even if the Chief's death were attributable to some extent to his heart attack six years prior to the incident, this is not a bar to recovery. Where a disability or death involves the "combined effect of [both] a traumatic event and an underlying disease" then the issue is whether the traumatic source was the "essential significant or the substantial contributing cause" of the resulting disability or death. *Gerba v. Board of Trustees*, 83 *N.J.* 174, 186–187, 416 *A.*2d 314 (1980); *Korelnia v. Board of Trustees*, 83 *N.J.* 163, 170, 416 *A.*2d 308 (1980).

Dr. Eisenstein's testimony and that of petitioner's other witnesses overwhelmingly establish that the traumatic struggle with the burglary suspect was the "essential significant or the substantial contributing cause" of the Chief's resultant disability and death. *Gerba, supra,* 83 *N.J.* at 186–187, 416 *A.*2d 314; *Korelnia, supra,* 83 *N.J.* at 170, 416 *A.*2d 308. The record is bereft of any contrary evidence. Under these circumstances, we need not defer

to the Board's finding. *Petrucelli v. Board of Trustees*, 211 *N.J.Super.* 280, 289, 511 *A*.2d 735 (App.Div.1986) (in construing "direct result" statutory test for accidental disability benefits, court need not defer to administrative judgment).

In sum, the Board's decision directly conflicts with our Supreme Court's construction of the statute, is far too "wide of the mark on the undisputed facts," and flagrantly violates established public policy. *See Cianciulli v. Public Employees' Retirement System Trustees*, 244 *N.J.Super.* 399, 401, 582 *A*.2d 1004 (App.Div.1990). Last but not least, the decision is grossly unfair. A police chief who dies as a direct result of chasing and battling with a criminal is entitled to at least the same measure of benefits as the injured corrections officers in *Gable*.