MARIE RUSSO, WIDOW OF PATSY RUSSO, DECEASED, PETITIONER-APPELLANT, v. TEACHERS' PENSION AND ANNUITY FUND, RESPONDENT-APPELLEE.

Argued October 25, 1972—Decided January 22, 1973.

Mr. *Jack Mandell* argued the cause for appellant (*Messrs. Balk, Jacobs, Goldberger and Mandell,* attorneys).

*Miss Prudence H. Bisbee,* Deputy Attorney General, argued the cause for respondent (*Mr. George F. Kugler, Jr.,* Attorney General of New Jersey, attorney).

The opinion of the Court was delivered by

WEINTRAUB, C. J. This case involves a claim against the Teachers' Pension and Annuity Fund (herein Fund) for accidental death benefits. The widow of the employee received the benefits payable for a nonaccidental death, consisting of the return of the employee's contribution with interest thereon and a sum equal to 1–½ times his last year's salary. *N. J. S. A.* 18A:66–38(a) and (b). Upon the premise that death was accidental, the widow sought further benefits consisting of a yearly pension of one-half of the employee's last year's salary payable to her for life. *N. J. S. A.* 18A:66–46. The Board of Trustees of the Fund found the death was not accidental within the meaning of the statute and therefore denied the claim for the pension. The Appellate Division affirmed in an unreported opinion and we granted the claimant's petition for certification. 60 *N. J.* 140 (1972).

The deceased was employed as a custodian for the Newark Board of Education. He died at work of a heart attack. His widow obtained workmen's compensation benefits upon the thesis that death was "by accident" within the meaning of the workmen's compensation statute. In the present proceedings against the pension Fund, the hearing officer, applying the standard controlling under the workmen's compensation statute, found for the claimant, but the Board of Trustees, although accepting that test, held "the decedent did not experience an accident while performing his duties as a custodian, rather his death just happened to occur at his place of employment."

The Appellate Division affirmed. The Appellate Division also said "that entitlement of benefits under the instant statute for a death from heart attack assertedly contributed to or caused by the decedent's work effort is to be

determined by the principles enunciated in workmen's compensation cases by such decisions as *Dwyer v. Ford Motor Co.*, 36 *N. J.* 487 (1962)," but the Appellate Division would not disturb the finding of fact of the Board of Trustees that the work effort was not causally connected with the death.

We, too, will not disturb that fact finding. The case is thin. The deceased had suffered two serious heart attacks, one in 1954 and the other in 1964, with substantial permanent disability. The medical theme in support of the claim was that the underlying disease of the heart was so far advanced that the deceased was capable of sedentary work only, and that even mild exertion could induce sudden death. On the day he died, decedent reported to work at 7:00 a.m. He was found about 40 minutes later, apparently dead. His work effort that morning was very light. Indeed his assigned duties had been moderated long before that day because of his infirmity. The claimant's expert nonetheless thought the work effort resulted in an acute coronary insufficiency (deprivation of blood and oxygen to the heart) and fibrillation (abnormal heart rhythm) leading to death in a matter of minutes. We, of course, are not sitting in review of the finding of accidental death in the workmen's compensation proceeding and do not intend what we say to reflect upon the award there made, but we agree that the finding in the present matter, that the work did not contribute in a material degree to the death, should not be disturbed by a reviewing court.

We granted certification in this case primarily to deal with the question whether the workmen's compensation test of compensability is applicable to a claim of accidental death under this pension and annuity statute. Several decisions of the Appellate Division, to which we will later refer, applied workmen's compensation concepts in pension cases. In *Wagner v. Board of Trustees of Public Employees' Retirement System*, 87 *N. J. Super.* 498 (App. Div. 1965), certif. denied, 45 *N. J.* 300 (1965), the Appellate Division disagreed with that view and we expressly reserved the question in *McGee*

v. *Board of Trustees of Public Employees' Retirement System*, 45 *N. J.* 576, 579 (1965).

We think the controlling standard under the pension statute here involved is different from the standard of the workmen's compensation statute, and this because of differences in the intended roles of the statutes and in the language employed.

Article 2 of the Workmen's Compensation Act provides a program of scheduled benefits accepted by employer and employee in lieu of a common law claim based on the employer's fault. *N. J. S. A.* 34:15–7 provides that

"* * * compensation for personal injuries to, or for the death of, such employee by accident arising out of and in the course of his employment"

shall be made in accordance with the schedule in *N. J. S. A.* 34:15–12 and 13.

In *Ciuba v. Irvington Varnish & Insulator Co.,* 27 *N. J.* 127 (1958), which involved a claim for death benefits on the basis of a heart attack, we held the unexpected injury was an "accident" within the meaning of the workmen's compensation statute and hence there need not also be some unexpected external event. Accordingly compensation must be awarded if the work in fact caused or aggravated the disability or accelerated the death, whether the work effort was ordinary or extraordinary, usual or unusual. We thus applied to a heart case the same concept of accidental injury which had become routinely accepted in compensation matters with respect to other unexpected injuries, see *Neylon v. Ford Motor Co.,* 10 *N. J.* 325 (1952), as for example when an employee experienced a muscular strain in performing his regular duties in apparently his regular way.

We do not doubt the abstract correctness of applying the stated principle in heart cases in workmen's compensation. The difficulty resides not in the concept but in the evident inability of the medical expert to aid the trier

of facts in deciding whether a heart seizure at work was the natural result of the progressive underlying disease, in which event no compensation would be payable, or was a result chargeable to the impact of the work effort, however normal for the employee, upon that progressive underlying disease. We attempted in *Dwyer v. Ford Motor Co.*, 36 *N. J.* 487 (1962), to provide greater guidance. We repeated that it is not enough that a heart seizure occurred at work. But we added that it is not enough that the work effort or strain played a minor or insignificant role. It must appear that the work effort or strain "contributed in some material degree" (*p.* 493), "played a material part" (*p.* 497) in causing, contributing to or accelerating a heart attack, with the burden of course upon the petitioner to show this connection by the preponderance of the believable evidence.

One can hardly say the results reached in workmen's compensation cases have been wholly harmonious. As we have said, our test calls for assistance the medical science seemingly cannot always provide. See *Aladits v. Simmons Co.*, 47 *N. J.* 115, 123–124 (1966). Hence, when the expert testimony is in conflict, a given case may well turn upon a lay feeling that the work stress or strain likely did or did not contribute in a material way to the end result. If this is the best that can be done, it nonetheless is tolerable in the light of the pervasive role which workmen's compensation is intended to have in our economic setting. The question is whether the same approach is equally appropriate under a pension statute.

The State has provided workmen's compensation benefits for public employees both at State and local levels. *N. J. S. A.* 34:15–43. Pension and annuity plans have another role. They provide retirement benefits after years of service, and although disability benefits are a rational part of such a program, there is no inherent compulsion to duplicate the coverage already provided by the workmen's compensation statute. Indeed the Legislature has expressly said there shall not be recoveries for disability under both the work-

men's compensation statute and pension plans. The subject is canvassed at length in *In re Smith,* 57 *N. J.* 368 (1971). Thus, with respect to the pension plan involved in the case before us, *N. J. S. A.* 43:16A–15.2, prior to an amendment in 1971 (*c.* 175, § 18), provided that no application for retirement benefits may be approved while the member is in receipt of periodic benefits under the workmen's compensation law. By reason of the 1971 amendment just cited, an application may now be approved in those circumstances but "the actuarial equivalent of such periodic benefits remaining to be paid shall be computed and will serve to reduce the pension portion of the retirement allowance payable to the retirant," subject to certain provisions there noted.

Thus, had the deceased been *disabled* by a work-connected accident, he could not have claimed benefits under both statutes, and this because of the legislative policy just mentioned. But an exception to that policy exists with respect to accidental *death* benefits. It was held in *Eckert v. New Jersey State Highway Department,* 1 *N. J.* 474 (1949), that a pension may be paid in addition to the death benefits under the workmen's compensation act. Accordingly the claimant before us is free to press the pension claim even though she recovered an award of workmen's compensation. But the question is whether the Legislature intended that an unexpected injury and resultant death which suffice for an award of workmen's compensation shall also serve to entitle a claimant to pension benefits. Just as there is no inherent compulsion to duplicate disability benefits, so there is no inherent compulsion to provide a pension in every case in which death benefits are payable under the workmen's compensation law.

We noted earlier that a number of cases did apply workmen's compensation concepts to pension statutes. *Roth v. Board of Trustees, Public Employees Retirement System,* 49 *N. J. Super.* 309, 319–320 (App. Div. 1958); *Kochen v. Consolidated Police and Firemen's Pension Fund Comm.,* 71

*N. J. Super.* 463, 477–478 (App. Div. 1962); *Fattore v. Police and Firemen's Retirement System of New Jersey,* 80 *N. J. Super.* 541, 549 (App. Div. 1963); *Getty v. Prison Officers' Pension Fund,* 85 *N. J. Super.* 383, 390 (App. Div. 1964). As we have said, that view as it bears upon the concept of an "accident" was questioned in 1965 in *Wagner, supra,* 87 *N. J. Super.* at 503–504, and in the same year we left the issue open in *McGee, supra,* 45 *N. J.* at 579. It seems to us that the Legislature responded to those decisions and by its response disapproved the application to pension statutes of the concept of *Ciuba* that the unexpected injury or death itself constituted the "accident" under such statutes. This we gather from a review of those cases and the amendatory legislation.

*Kochen, supra,* 71 *N. J. Super.* 463, which involved the Consolidated Police and Firemen's Pension Fund was decided in 1962. *N. J. S. A.* 43:16–2 had then provided for benefits for a member who "shall have received permanent disability while on duty." After *Kochen,* that section was amended by *L.* 1964, *c.* 242, § 2, to require that the member "shall have received permanent disability as a direct result of a traumatic event occurring while performing his regular or assigned duties."

*Fattore, supra,* 80 *N. J. Super.* 541, which involved the Police and Firemen's Retirement System of New Jersey, was decided in 1963. *N. J. S. A.* 43:16A–7 then spoke of a medical certification "that the natural and proximate cause of such disability was an accident met in the actual performance of duty." By *L.* 1964, *c.* 241, § 4, the statute was amended to require medical certification "that the member is permanently and totally disabled as a direct result of a traumatic event occurring during and as a result of the performance of his regular or assigned duties * * *" and thereafter by *L.* 1967, *c.* 250, § 7, by adding that:

"Permanent and total disability resulting from a cardiovascular, pulmonary or musculo-skeletal condition which was not a direct re-

sult of a traumatic event occurring in the performance of duty shall be deemed an ordinary disability."

It was thereafter held in *Shea v. Board of Trustees of Police & Firemen's Retirement System,* 116 *N. J. Super.* 348 (App. Div. 1971), that accidental disability retirement benefits sought because of a heart attack could not be allowed where the patrolman's experience was neither unexpected nor unusual.

*Getty, supra,* 85 *N. J. Super.* 383, involving the Prison Officers' Pension Fund, was decided in 1964. *N. J. S. A.* 43:7–12 then provided for disability benefits for an officer "who shall have received permanent disability in the performance of his duty." By *L.* 1969, *c.* 56, § 4, that section was amended to require "permanent disability as a direct result of a traumatic event occurring while performing his regular or assigned duties."

*Roth, supra,* 49 *N. J. Super.* 309, which involved the Public Employees' Retirement System, was decided in 1958. Dealing with a problem of causal connection, *Roth* initiated the view that workmen's compensation concepts could be applied to a pension statute. *Roth* did not involve the definition of an "accident." *Wagner, supra,* 87 *N. J. Super.* 498, which disputed *Roth,* and *McGee, supra,* 45 *N. J.* 576, in which we left open the application of the *Ciuba* concept of an accident to pension statutes, were decided in 1965. Thereupon *N. J. S. A.* 43:15A–43 of the Public Employees' Retirement System statute was amended by *L.* 1966, *c.* 67, § 4, to provide for accidental disability retirement:

"* * * if said employee is permanently and totally disabled as a direct result of a traumatic event occurring during and as a result of the performance of his regular or assigned duties"

and to say that

"Permanent and total disability resulting from a cardiovascular, pulmonary or musculo-skeletal condition which was not a direct result of a traumatic event occurring in the performance of duty shall be deemed an ordinary disability."

This amendment was found to reject the concept of *Ciuba* and *Dwyer* that an "accident" can be found in the impact of ordinary work effort upon a progressive disease in *Hillman v. Board of Trustees, Public Employees' Retirement System,* 109 *N. J. Super.* 449 (App. Div. 1970), in which the claim made was for accidental disability retirement.

Finally we note that the disability retirement section, *N. J. S. A.* 18A:66–39, of the pension statute with which we are here concerned was also amended in 1966 (*c.* 66, § 2) to contain the same language we have just quoted from *N. J. S. A.* 43:15A–43 of the Public Employees' Retirement System statute. In *Titman v. Board of Trustees of Teachers' Pension and Annuity Fund,* 107 *N. J. Super.* 244, 246 (App. Div. 1969), the words "traumatic event" were found to be "a significant departure from the term 'accident' previously found in the act."

This resume demonstrates effectively that the Legislature did not subscribe to the theme that the concept of "accident" which *Ciuba* and *Dwyer* found in the Workmen's Compensation Act should apply to a pension statute. But the point is made that the amendments to which we have referred related to provisions for *disability* retirement and were not duplicated in the provisions dealing with *death* benefits, from which omission it is argued the Legislature must have intended a different concept of "accident" whenever death ensues. Reliance is placed on *Murphy v. Division of Pensions,* 117 *N. J. Super.* 206 (App. Div. 1971), which involved a death benefits claim under *N. J. S. A.* 43:16–4 of the Consolidated Police and Firemen's Pension Fund statute which referred to the loss of life "while on duty." The accidental disability retirement provision, *N. J. S. A.* 43:16–2, had, in like terms, provided for benefits for permanent disability "while on duty," which provision was amended by *L.* 1964, *c.* 242, § 2, to require that the disability of the employee be "a direct result of a traumatic event occurring while performing his regular or assigned duties." In *Murphy,* the Appellate Division said the compensation principles

of *Ciuba and Dwyer* applied, adding that "The situation may be different if the claim is only for permanent disability" (*pp.* 213–214), and referring to the amendment of *N. J. S. A.* 43:16–2, just mentioned. In the case now before us, the Appellate Division cited *Murphy* to support its statement that the compensation cases controlled a death claim.

█ Of course the concept embraced in *Ciuba* and reaffirmed in *Dwyer,* that the "accident" was the unexpected injury as distinguished from some external event, applies in workmen's compensation matters whether the claim is for *disability* benefits or for *death* benefits. *Murphy* suggests the Legislature was content with that reading of a pension statute insofar as *death* benefits are concerned but not with respect to *disability* retirement benefits. The result would be an apparent novelty, two concepts of an accident in a single statute, one for disability retirement and the other in cases of death. We of course know that no such distinction was intended in the pension statutes as originally enacted, for the same language applied whether the claim was for disability or for death. Conceivably the Legislature might adopt different criteria of an "accident" for pension purposes depending upon whether the employee dies, but one would expect a clear articulation of an intent thus to depart from the original statutory scheme. The more natural supposition is that the Legislature intended the concept of "accident" to be the same for both purposes and assumed that an amendment rejecting a judicial view of "accident" for disability retirement purposes would communicate to the judiciary the same disapproval with respect to a case involving death benefits.

The Public Employees' Retirement System statute, which, as we have noted, was amended in 1966 with respect to accidental disability retirement (*N. J. S. A.* 43:15A–43) to provide such benefits:

"\* \* \* if said employee is permanently and totally disabled as a direct result of a traumatic event occurring during and as a result of the performance of his regular or assigned duties, \* \* \*"

was amended by *L*. 1971, *c*. 213, § 23, with respect to accidental death benefits (*N. J. S. A.* 43:15A–49) to delete the language bracketed in the following excerpt and to add the language we italicize:

"Upon the death of a member in active service as a result of an accident [arising out of and in the course of his employment] *met in the actual performance of duty at some definite time and place* * * *"

So, too, the same amendment was made by *L*. 1971, *c*. 121, § 26, of *N. J. S. A.* 18A:66–46, of the statute now before us, dealing with accidental death benefits.

■ One suspects the amendment was inspired by the pendency of the *Murphy* litigation in which death benefits were being claimed on the thesis that the workmen's compensation concept of an accident applied. If this supposition is correct, it would fortify the purpose we find implicit in the amendment, to require something more than an injury which, although unexpected in the sense that it was not contemplated, was not an unusual consequence of ordinary effort.

We do not know why the verbiage selected in 1971 was not the same used in the 1966 amendment of the accidental *disability* retirement provision. But the Legislature did not choose the phrasing of the workmen's compensation statute (*N. J. S. A.* 34:15–7), "for personal injuries to, or for the death of, such employee by accident arising out of and in the course of his employment," from which *Ciuba* had emerged. Rather the Legislature eliminated so much of the original statutory language as appears also in the workmen's compensation statute, and introduced language which imports something more than a death induced by the usual impact of ordinary effort upon a progressive disease.

It would not be appropriate for us to say now that the several formulations in the pension statutes cited above will mean the same thing in all settings, but we are convinced the Legislature intended by them to require something more

than an unexpected injury or death to satisfy the requirement of accidental disability or accidental death.

The concept of accidental injury or death is elusive. It was discussed exhaustively with respect to insurance policies in *Linden Motor Freight Co., Inc. v. Travelers Insurance Co.*, 40 *N. J.* 511 (1963); see also *Harris v. John Hancock Mutual Life Ins. Co.*, 41 *N. J.* 565 (1964), and *Perrine v. Prudential Insurance Co. of America*, 56 *N. J.* 120 (1970). Although the subject matters are not identical, we think it appropriate to draw upon those decisions in dealing with the immediate problem under pension statutes. In those cases, we concluded that when an insurance policy does not purport to cover an unexpected injury as such, there must be something about the preceding acts and events, alone or in the light of the unexpected injurious result, to lead an ordinary person "to call the means 'accidental,' even though, strictly speaking, nothing unexpected or unforeseen occurred in the course of the preceding acts." *Perrine, supra*, 56 *N. J.* at 126. In ordinary parlance, an accident may be found either in an unintended external event or in an unanticipated consequence of an intended external event if that consequence is extraordinary or unusual in common experience. Injury by ordinary work effort or strain to a diseased heart, although unexpected by the individual afflicted, is not an extraordinary or unusual consequence in common experience. We are satisfied that disability or death in such circumstances is not accidental within the meaning of a pension statute when all that appears is that the employee was doing his usual work in the usual way.

The judgment of the Appellate Division is affirmed. No costs.

*For affirmance*—Chief Justice WEINTRAUB, Justices JACOBS, HALL and MOUNTAIN, and Judge SULLIVAN—5.

*For reversal*—None.