**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0585-22

ROBERTO VILLARREAL-RIOS,

    Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
POLICE AND FIREMEN'S
RETIREMENT SYSTEM,

    Respondent-Respondent.

_____

Argued November 07, 2024 – Decided January 17, 2025

Before Judges Currier and Paganelli.

On appeal from the Board of Trustees of the Police and Firemen's Retirement System, Department of the Treasury, PFRS No. xx7900.

Samuel M. Gaylord argued the cause for appellant (Szaferman Lakind Blumstein & Blader, attorneys; Samuel M. Gaylord, on the brief).

Robert J. Papazian argued the cause for respondent (Gebhardt & Kiefer, PC, attorneys; Leslie A. Parikh and Linda M. Brown, on the brief).

PER CURIAM

Petitioner Roberto Villarreal-Rios injured his ankle responding to a call for an electrical fire on September 22, 2017, while working as a Millburn Township firefighter. Petitioner's application for accidental disability retirement benefits (ADRB), pursuant to N.J.S.A. 43:16A-7, was denied in an initial decision by the Board of Trustees, Police and Firemen's Retirement System of New Jersey (Board).

The matter was transferred to the Office of Administrative Law. After a hearing, the Administrative Law Judge (ALJ) concluded petitioner was not eligible for ADRB because he did not "satisfy the 'undesigned and unexpected' prong" under the statute and case law and affirmed the denial. On September 12, 2022, the Board adopted the ALJ's initial decision denying petitioner's application for ADRB. Based on our careful review of the record and the applicable law, we affirm.

I.

During the hearing before the ALJ, petitioner testified he was employed by the Millburn Township Fire Department as a firefighter for over seven years prior to this incident. He stated he received training on how to "load[] and unload[] equipment[;] . . . lay[] and connect[] [a] hose to hydrants, standpipes

and intake and discharge valves[; and] . . . perform[] preparatory operations for the delivery of water discharge lines and determine[] required pump pressure to provide appropriate pressure." Additionally, he testified he previously received training and had experience "travers[ing] uneven landscaping and . . . be[ing] on inclines during . . . the course of [his] career in fighting fires."

On September 22, 2017, petitioner, along with the Captain and another firefighter, responded to a call for an electrical fire in a basement. According to petitioner, when they arrived at the scene, a bookshelf was blocking the door to the basement. Therefore, the Captain asked him to retrieve additional feet of hose from the truck so they could access another entrance to the basement to reach the fire. The truck was parked at the bottom of the driveway, about one hundred feet from the building. As he returned with the extra feet of hose, petitioner stated he twisted his ankle and fell on the driveway. He stated that he did not recall what caused him to twist his ankle.[1]

After the fall, petitioner got up, brought the hose to the other firefighters, and filled it. Immediately thereafter, the station received a call for another fire. However, as petitioner responded to the call, it was cancelled. When petitioner

---

[1] In petitioner's application for ADRB, he stated "while carrying hose to the basement I twisted my ankle on the steps causing" an injury to his ankle.

returned to the station, the Chief noticed he was limping and told him to seek medical treatment. Petitioner was taken to the hospital and diagnosed with a navicular fracture to the ankle for which he received medical treatment. Petitioner provided a statement regarding the accident and the Chief prepared an incident report.[2]

After the hearing concluded, the ALJ found petitioner "was employed as a [firefighter] performing his required duties on September 22, 2017, when he twisted his left ankle while carrying a fire hose up a driveway." The ALJ further found the event that caused petitioner's disability was not undesigned and unexpected because petitioner "was performing his job duties when he took out the long hose and fell while he was bringing [it] to the [firefighters] in the basement. [Petitioner] admitted that this is part of his job duties and expected of a fire fighter at the scene." The ALJ concluded petitioner did "not satisfy the 'undesigned and unexpected' prong of the Richardson[3] test" and therefore, "ha[d] not met all of the requirements necessary to qualify for [ADRB]."

---

[2] In the incident report, the Chief stated petitioner twisted his ankle as he stretched a hose line up the driveway.

[3] See Richardson v. Bd. of Trs., Police & Firemen's Ret. Sys., 192 N.J. 189, 212-13 (2007).

A-0585-22

The Board accepted the ALJ's determination and adopted the entirety of the initial decision. This appeal follows.

II.

Our review of an administrative agency's determination is limited. Allstars Auto. Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018) (citing Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011)). "[A]gencies have 'expertise and superior knowledge . . . in their specialized fields.'" Hemsey v. Bd. of Trs., Police & Firemen's Ret. Sys., 198 N.J. 215, 223 (2009) (alteration in original) (quoting In re License Issued to Zahl, 186 N.J. 341, 353 (2006)). We will "not substitute [our] own judgment for the agency's even though [a] court might have reached a different result." In re Carter, 191 N.J. 474, 483 (2007) (quoting Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992)).

We "review[] agency decisions under an arbitrary and capricious standard." Zimmerman v. Sussex Cnty. Educ. Servs. Comm'n, 237 N.J. 465, 475 (2019). "An agency's determination on the merits 'will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record.'" Saccone v. Bd. of Trs., Police & Firemen's

Ret. Sys., 219 N.J. 369, 380 (2014) (quoting Russo, 206 N.J. at 27). An agency's interpretation of the law is reviewed de novo. Russo, 206 N.J. at 27.

III.

On appeal, petitioner contends the Board erred in determining his injury was not caused by a traumatic event that was undesigned and unexpected and denying his application for ADRB.

A PFRS member is entitled to ADRB if

> the member is permanently and totally disabled as a direct result of a traumatic event occurring during and as a result of the performance of his regular or assigned duties and that such disability was not the result of the member's willful negligence and that such member is mentally or physically incapacitated for the performance of his usual duty and of any other available duty in the department which his employer is willing to assign to him.
>
> [N.J.S.A. 43:16A-7(a)(1).]

In Richardson, the New Jersey Supreme Court explained:

> [T]o obtain accidental disability benefits, a member must prove:
>
> 1. that he is permanently and totally disabled;
> 2. as a direct result of a traumatic event that is
>     a. identifiable as to time and place,
>     b. undesigned and unexpected, and
>     c. caused by a circumstance external to the member (not the result of pre-existing

disease that is aggravated or accelerated by the work);

3. that the traumatic event occurred during and as a result of the member's regular or assigned duties;
4. that the disability was not the result of the member's willful negligence; an[d]
5. that the member is mentally or physically incapacitated from performing his usual or any other duty.

[Richardson, 192 N.J. at 212-13.]

The Richardson Court found, to be "undesigned or unexpected," the event at issue may be either "an unintended external event or an unanticipated consequence of an intended external event if that consequence is extraordinary or unusual in common experience." 192 N.J. at 201 (quoting Russo v. Tchrs.' Pension & Annuity Fund, 62 N.J. 142, 152 (1973)). "[W]hen all that appears is that the employee was doing his usual work in the usual way" the "undesigned or unexpected" element is not satisfied. Ibid. (quoting Russo, 62 N.J. at 154).

A traumatic event can occur during ordinary work effort, but the work alone "cannot be considered a traumatic event." Id. at 202 (quoting Cattani v. Bd. of Trs., Police & Firemen's Ret. Sys. 69 N.J. 578, 586 (1976)).

"To properly apply the Richardson standard . . . the Board and a reviewing court must carefully consider not only the member's job responsibilities and training, but all aspects of the event itself. No single factor governs the

7

analysis." Mount v. Bd. of Trs., Police & Firemen's Ret. Sys., 233 N.J. 402, 427 (2018).

Examples of events that satisfy the "traumatic event prong" include "[a] policeman . . . shot while pursuing a suspect; a librarian . . . hit by a falling bookshelf while re-shelving books; a social worker . . . [who caught] her hand in the car door while transporting a child to court." Richardson, 192 N.J. at 214. The examples are "identifiable as to time and place; undesigned and unexpected; and not the result of pre-existing disease, aggravated or accelerated by the work." Ibid.

In Moran v. Board of Trustees, Police & Firemen's Retirement System, 438 N.J. Super. 346, 354 (App. Div. 2014), we found the element was satisfied when a "combination of unusual circumstances . . . forced [the appellant] to carry out his paramount duty to rescue fire victims" leading to his injury. The unusual circumstances included "the failure of the truck unit to arrive, and the discovery of victims trapped inside a fully engulfed burning building, at a point when [the appellant] did not have available to him the tools that would ordinarily be used to break down the door." Ibid.

Here, petitioner has not demonstrated an "unexpected happening" that caused him to injure his ankle. He testified regarding his training and the

specific duties of his job which included loading and unloading equipment, laying and connecting hoses, and preparing for the delivery of water discharge lines. He stated he received training and had experience "travers[ing] uneven landscaping and . . . be[ing] on inclines during . . . the course of [his] career in fighting fires." The evidence reflects petitioner was performing his usual job duties when he was injured. Dragging a hose up a driveway is not an unexpected event in his line of work.

We are satisfied the Board's decision denying petitioner's application for ADRB was supported by the credible evidence in the record and based on the applicable statute and prevailing law. Its final decision was not arbitrary, capricious, or unreasonable.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

9

A-0585-22