**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1049-24

IDEERIA LAWRENCE,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
POLICE AND FIREMEN'S
RETIREMENT SYSTEM,

     Respondent-Respondent.

_____

> Argued January 27, 2026 – Decided February 9, 2026
>
> Before Judges Perez Friscia and Vinci.
>
> On appeal from the Board of Trustees of the Police and Firemen's Retirement System, Department of the Treasury, PFRS No. xx4516.
>
> Samuel M. Gaylord argued the cause for appellant (Szaferman Lakind Blumstein & Blader PC, attorneys; Samuel M. Gaylord, on the brief).
>
> Thomas R. Hower, Staff Attorney, argued the cause for respondent (Nels J. Lauritzen, Deputy Director, Legal Affairs, attorney; Thomas R. Hower, on the brief).

PER CURIAM

Petitioner Ideeria Lawrence appeals from a November 6, 2024 final agency decision of the Board of Trustees (Board) of the Police and Firemen's Retirement System (PFRS) denying her application for accidental disability retirement (ADR) benefits. Based on our review of the record and applicable principles of law, we affirm.

Lawrence was employed as a senior corrections police officer at Edna Mahan Correctional Facility. On October 12, 2014, she was "assigned to the C [c]ottage as the [s]uicide [u]nit officer" where she had been assigned "for a while." Lawrence was advised an inmate "was coming to [her]" for processing. The inmate was "[five-feet-three-inches] to [five-feet-four-inches]" and two hundred pounds. Lawrence had "never dealt with" this inmate previously.

Lawrence and two other female officers "placed [the inmate] in the room . . . and . . . closed the door." The inmate "was supposed to give [the officers] her clothes, but she . . . refus[ed.] . . . So[,] . . . the sergeant order[ed] [the officers] to go in and remove her clothes." "As [the officers] began to pull off her shirt . . . she just became very irate and combative and sw[ung] her arms." The inmate was "pushing and hitting . . . and then she started kicking."

During the altercation, the officers used mace to subdue the inmate, and "had to decontaminate her." The officers "had to physically lift her and carry her to the shower and bring her back to the cell, and at that point [they] were able to remove her clothes and place her in a gown." The interaction with the inmate lasted "between [twenty] and [thirty] minutes."

At some point during the incident, Lawrence sustained an injury to her right shoulder. She was "not exactly sure" when she sustained the injury because "[she] did[ not] feel [the pain] until [the incident] was over." She "[does not] know exactly when the injury occurred. [She] believe[s] it was a combination of [the physical altercation] and carrying [the inmate] to and from the shower."

Lawrence began to feel pain when she "[s]tarted writing [her] reports" on the incident and went to an "outside facility" for an X-ray. There were "no broken bones," but the arm was "really hard to raise." On the day of the incident, Lawrence completed and signed an injury report in which she stated that "[w]hile trying to subdue a non[-]compliant and combative inmate during a strip search [she] injured the right shoulder."

Lawrence later underwent surgery on her shoulder and returned to work in February 2016. On August 11, 2021, she filed an application for ADR because her shoulder "did[ not] heal for [her] to perform [her] job duties." On February

A-1049-24

15, 2022, the Board denied Lawrence's application for ADR benefits because the "incident was not considered to be undesigned and unexpected." After Lawrence contested the Board's denial, an Administrative Law Judge (ALJ) conducted a two-day hearing at which Lawrence testified as the only witness.

On September 27, 2024, the ALJ affirmed the Board's denial of ADR benefits in a written decision. The ALJ found Lawrence was

> performing her ordinary duties: stripping an inmate who had become uncooperative and needed to be subdued. After [m]ace was used, the inmate was carried by three officers to the shower. [Lawrence] cannot point to an onrush of force or any particular violent act of the inmate as the cause of her disability.

The ALJ concluded the incident "was not undesigned and unexpected" because Lawrence "was performing her job" and "[a]ny injury sustained was the result of performing her normal work effort in her normal way, with no external happening." On November 6, 2024, the Board issued its final decision adopting the ALJ's decision. This appeal followed.

On appeal, Lawrence argues the Board improperly determined her disability was not the result of an undesigned and unexpected event. Specifically, "although participating in an anticipated event, [she] sustained an unintended consequence of the event in dealing with an inmate she had never dealt with." She "had no warning . . . that a routine strip search would result in

4

the reaction and violent combative nature of the inmate" and "the unintended consequence of the inmate going crazy was directly from the event."

"Our review of administrative agency action is limited." Russo v. Bd. of Trs., PFRS, 206 N.J. 14, 27 (2011) (citing In re Herrmann, 192 N.J. 19, 27 (2007)). "An agency's determination on the merits 'will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record.'" Saccone v. Bd. of Trs., PFRS, 219 N.J. 369, 380 (2014) (quoting Russo, 206 N.J. at 27).

"Arbitrary and capricious action of administrative bodies means willful and unreasoning action, without consideration and in disregard of circumstances. Where there is room for two opinions, action is [valid] when exercised honestly and upon due consideration, even though it may be believed that an erroneous conclusion has been reached." Worthington v. Fauver, 88 N.J. 183, 204-05 (1982) (alteration in original) (quoting Bayshore Sewerage Co. v. Dep't Env't Prot., 122 N.J. Super. 184, 199 (Ch. Div. 1973)).

In determining whether an agency's decision is arbitrary, capricious, or unreasonable, we examine: (1) whether the agency's decision conforms with relevant law; (2) whether the decision is supported by substantial credible evidence in the record; and (3) whether in applying the law to the facts, the

A-1049-24

"agency clearly erred in reaching [its] conclusion." In re Stallworth, 208 N.J. 182, 194 (2011) (quoting In re Carter, 191 N.J. 474, 482-83 (2007)).

In Richardson v. Board of Trustees, PFRS, 192 N.J. 189 (2007), our Supreme Court clarified the meaning of the term "traumatic event" under N.J.S.A. 43:16A-7(1). A claimant for accidental disability retirement benefits must establish:

> (1) that [they are] permanently and totally disabled;
>
> (2) as a direct result of a traumatic event that is
>
>> a. identifiable as to time and place,
>>
>> b. undesigned and unexpected, and
>>
>> c. caused by a circumstance external to the member (not the result of pre-existing disease that is aggravated or accelerated by the work);
>
> (3) that the traumatic event occurred during and as a result of the member's regular or assigned duties;
>
> (4) that the disability was not the result of the member's willful negligence; and
>
> (5) that the member is mentally or physically incapacitated from performing his usual or any other duty.
>
> [Id. at 212-13.]

A-1049-24

Under N.J.S.A. 43:16A-7(1), a member applying for accidental disability must prove the event was "undesigned and unexpected." Ibid. As the Court explained in Richardson, "[t]he polestar of the inquiry is whether, during the regular performance of his job, an unexpected happening, not the result of pre-existing disease alone or in combination with the work, has occurred and directly resulted in the permanent and total disability of the member." Id. at 214. "Undesigned and unexpected" requires "an unanticipated consequence" that "is extraordinary or unusual in common experience." Id. at 201 (quoting Russo v. Tchrs.' Pension & Annuity Fund, 62 N.J. 142, 154 (1973)). The evaluation is not based on results, but instead on what the injured person was doing at the time of the event. Russo, 206 N.J. at 18.

In Mount v. Board of Trustees, PFRS, 233 N.J. 402, 427 (2018), the Court explained the analysis requires "the Board and a reviewing court [to] carefully consider not only the member's job responsibilities and training, but all aspects of the event itself. No single factor governs the analysis." In Richardson the Court explained, "[a] policeman can be shot while pursuing a suspect; a librarian can be hit by a falling bookshelf while re-shelving books; a social worker can catch her hand in the car door while transporting a child to court." 192 N.J. at 214. "[T]hat a member is injured while performing his ordinary duties does not

7

A-1049-24

disqualify him from receiving accidental disability benefits; some injuries sustained during ordinary work effort will pass muster and others will not." Ibid.

Lawrence's contention that her case is similar to Richardson and Moran v. Board of Trustees, PFRS, 438 N.J. Super. 346 (App. Div. 2014), is not convincing. In Richardson, a corrections officer was injured while attempting to subdue an inmate. 192 N.J. at 193. There, the officer straddled the inmate to hold him down. Ibid. The inmate continued to kick, punch, and throw his body around, and eventually pulled himself loose. Ibid. The inmate then forcefully jerked up from the ground and knocked the officer backward, injuring him. Ibid.

In Moran, the court found an undesigned and unexpected event occurred when a "combination of unusual circumstances . . . led to [the member's] injury." 438 N.J. Super. at 354. In that case, a firefighter was injured after kicking down a door to a burning building because he heard voices yelling from inside. Id. at 349-50. The firefighter was part of the "engine company" that brought hoses to burning buildings and not part of the "truck company" that brought equipment used to forcibly enter buildings. Id. at 349. The "truck company" was running late, so the firefighter attempted to rescue victims trapped inside the building despite not having the proper equipment. Id. at 354. We concluded the firefighter's injury was caused by an undesigned and unexpected event because

the firefighter faced unusual circumstances, including the presence of victims inside the burning building, the "truck company's" delay, and the lack of equipment to break down the door.  Ibid.

Unlike in Richardson and Moran, Lawrence cannot meet her burden to prove her disability resulted from an "unexpected happening."  She did not face unusual circumstances like in Moran; nor can she establish she was injured as a result of an unexpected force exerted by another individual like in Richardson. In fact, Lawrence testified she is "not exactly sure" when during the incident she sustained the injury because "[she] did[ not] feel [the pain] until [the incident] was over."  She "believes it was a combination of [the physical altercation] and carrying [the inmate] to and from the shower."  Because Lawrence is unable to establish that her disability was caused by an unexpected force exerted by the inmate or if it resulted from the discharge of her ordinary work duties such as subduing the inmate or moving the inmate to and from the shower, she cannot meet her burden to prove her disability was caused by an undesigned and unexpected event.[1]

---

[1]  At oral argument before us, Lawrence conceded that if she was injured as a result of moving the inmate to and from the shower, her disability would not have been caused by an undesigned and unexpected event.

After considering all the evidence presented and the applicable legal standards, the ALJ determined Lawerence failed to prove by a preponderance of the evidence that her disability was caused by an undesigned and unexpected event. The ALJ's decision was based on ample findings supported by substantial credible evidence in the record and was not arbitrary, capricious, or unreasonable. We discern no basis to disturb the Board's decision to adopt the ALJ's findings and deny Lawrence's application for ADR benefits.

The Board's decision is supported by sufficient credible evidence on the record as a whole. R. 2:11-3(e)(1)(D). To the extent we have not otherwise addressed Lawrence's arguments, they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division