**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1105-24

GREGORY R. TANTUM,

      Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
POLICE AND FIREMEN'S
RETIREMENT SYSTEM,

      Respondent-Respondent.

_____

Argued April 21, 2026 – Decided May 4, 2026

Before Judges Rose and Rosero.

On appeal from the Board of Trustees of the Police and Firemen's Retirement System, Department of the Treasury, PFRS No. xx2126.

Herbert J. Stayton, Jr. (Stayton Law, LLC) argued the cause for appellant.

Thomas R. Hower, Staff Attorney, argued the cause for respondent (Nels J. Lauritzen, Legal Affairs Deputy Director, attorney; Thomas R. Hower, on the brief).

PER CURIAM

Gregory R. Tantum, a former police officer with the Mount Laurel Police Department (MLPD), appeals from a November 6, 2024 final decision of the Board of Trustees (Board) of the Police and Firemen's Retirement System (PFRS) denying his application for accidental disability retirement benefits (ADRB) pursuant to N.J.S.A. 43:16A-7. In doing so, the Board adopted the initial decision of the Administrative Law Judge (ALJ), finding Tantum's disability claim was not "undesigned and unexpected." We affirm.

I.

The record before the Board reflects Tantum commenced his employment as an MLPD police officer in 2007. During the course of his employment on October 18, 2019, Tantum injured his right elbow while using an animal snare device to move a deer carcass from the driveway of a bank. Tantum claimed he first injured the same elbow on June 16, 2018.

Tantum applied for ADRB based on both incidents. The Board found Tantum was not totally and permanently disabled from the June 16, 2018 incident. Pertinent to this appeal, the Board determined Tantum was totally and permanently disabled as a direct result of the October 18, 2019 incident. The Board also determined the incident was "identifiable as to place and time," "occurred as a result of . . . Tantum's regular and assigned duties[,] and was not

the result of his willful negligence." Finding the disabling event was not "undesigned and unexpected," however, the Board denied Tantum's application for ADRB. Instead, the Board awarded Tantum ordinary disability retirement benefits. See N.J.S.A. 43:16A-6.

Tantum thereafter filed an administrative appeal and the matter was transmitted to the Office of Administrative Law as a contested case. During the one-day hearing before the ALJ, Tantum was the only witness to testify. The ALJ also considered documentary evidence, including: an MLPD general order listing "police officer essential functions"; Tantum's medical evaluation; a memo from Tantum's supervisor describing the incident; and photos of the deer and driveway.

Tantum testified he was dispatched to the area near the bank "to locate a deceased deer." Tantum described the deer carcass as "very average" in size. He did not estimate the deer's weight, but stated it "would cause significant damage to [a] vehicle."

Noticing the deer was decomposing, Tantum retrieved an animal snare from his police vehicle. Tantum defined the snare as "[a] metal tube with a wire running from the far tip inside the tube out the back end." Tantum "placed the metal wire over one of the front legs of the deer, tightened the wire" and

A-1105-24

"attempted to pull" with both of his arms. After he began pulling the carcass, Tantum "felt a significant pain, pop, crunch in [his] right elbow" and stopped immediately. The carcass did not budge. Tantum then moved the snare's pole into his left hand and placed it under his arm. Using his body weight, Tantum moved the deer "out to the county road" clearing the bank's handicapped walkway.

Tantum testified, as a police officer, it was his responsibility to move the carcass out of a lane of traffic, but he was not obligated to remove an animal carcass from private property. Tantum stated he did so on this occasion because the bank had "a working relationship with the Township." Tantum also was concerned that had he not removed the carcass, he would have been reprimanded. Tantum stated he neither received training on using a snare to drag a deer carcass, nor used a snare to move a deer carcass prior to this incident. Tantum stated he used a snare when dealing with aggressive dogs.

On cross-examination, Tantum testified he did not know if other officers used a snare for this purpose. But Tantum noted he had "seen all kinds of methods" for deer carcass removal and previously used a dog leash to move a dead deer off the highway. He chose to use a snare in this instance because he was acting alone, the deer was decomposing, and he did not want to grab the

4

carcass with his hands. Tantum acknowledged he previously responded to deer removal calls. Although Tantum was required to <u>move</u> the carcass from traffic lanes, he was not required to <u>remove</u> the carcasses from the roadway, which, he stated was the responsibility of the "Highway Department." Tantum further testified on those occasions when he was required to move deer carcasses, he had help from other officers. Tantum also acknowledged the MTPD's general order, requiring police, as part of their essential functions to: "[p]ush objects, vehicles, or persons"; "[p]ull objects or persons"; "[d]rag objects or persons"; and "[i]nvestigate animal complaints."

On redirect examination, Tantum explained he did not call for backup to move the carcass on the incident date because no officers were available.

On October 15, 2024, the ALJ issued an initial decision upholding the Board's denial of ADRB by finding the disabling event was not undesigned and unexpected. The evidence adduced at the hearing is accurately detailed in the ALJ's cogent written decision.

In his decision, the ALJ squarely addressed the issues raised in view of the governing law, including our Supreme Court's seminal decision in <u>Richardson v. Board of Trustees, Police & Firemen's Retirement System</u>, 192 N.J. 189 (2007). The ALJ concluded Tantum "failed to meet his burden" under

the "undesigned and unexpected" element of the <u>Richardson</u> factors.  The judge

elaborated:

> By his own account, he had removed animals from roadways previously; he had used the snare previously; and he knew the protocols for an animal in a county roadway – notwithstanding that, in his consideration, expediency overruled regulations.  The fact that Tantum experienced an injury while performing a not unusual task, without requesting assistance, is not "extraordinary or unusual in common experience."  <u>Id.</u> at 201.  As discussed in <u>Russo v. Teachers' Pension & Annuity Fund</u>, 62 N.J. 142, 154 (1973), an "[i]njury by ordinary work effort" when "the employee was doing his usual work in the usual way," does not qualify as a traumatic event.
>
> Put simply, there was nothing about the activity of removing an animal carcass that Tantum was engaged in at the time of his injury that was "undesigned" or "unexpected" under the law.  In a municipality which has an area of roughly 15% open space or farmland, it is not unexpected that wildlife will be impacted.
>
> Tantum could point to nothing out of the ordinary that occurred during this assignment other than he did not call for assistance – potentially fearing action of his superiors if he made such a request.
>
> [(Footnote omitted).]

The ALJ also rejected, as irrelevant under <u>Richardson</u>, Tantum's argument

"[t]hat he did not 'expect' to sustain a total and permanent disability from a

routine assignment." Accordingly, the ALJ denied Tantum's application for ADRB.

Tantum thereafter filed exceptions to the ALJ's decision, arguing the decision "[wa]s against the weight of the evidence and missapplie[d] the relevant case law." In its November 6, 2024 final decision, the Board adopted the ALJ's decision affirming the denial of Tantum's application for ADRB. This appeal followed.

Before us, Tantum argues the Board's decision is arbitrary, unreasonable, and capricious because he established, by a preponderance of the evidence, an unexpected event occurred under Richardson. Tantum maintains he is entitled to ADRB because he did not plan or intend the October 18, 2019 accident.

II.

Our review of an administrative agency's final determination is limited. Russo v. Bd of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011). Ordinarily, we will "not disturb an administrative agency's determinations or findings unless there is a clear showing that (1) the agency did not follow the law; (2) the decision was arbitrary, capricious, or unreasonable; or (3) the decision was not supported by substantial evidence." In re Virtua-West Jersey Hosp. Voorhees for a Certificate of Need, 194 N.J. 413, 422 (2008). "The

burden of demonstrating that the agency's action was arbitrary, capricious[,] or unreasonable rests upon the person challenging the administrative action." In re Arenas, 385 N.J. Super. 440, 443-44 (App. Div. 2006).

"Like all of the public retirement systems, the PFRS includes provisions for the grant of ordinary and accidental disability benefits." Mount v. Bd. of Trs., Police and Firemen's Ret. Sys., 233 N.J. 402, 419 (2018) (quoting Patterson v. Bd. of Trs., State Police Ret. Sys., 194 N.J. 29, 42 (2008)). "A PFRS member can qualify for ordinary disability benefits if he is disabled for any reason; the disability need not have a work connection," however, "[t]o be eligible for greater benefits under the accidental disability provision, . . . a PFRS member must satisfy N.J.S.A. 43:16A-7(1)'s more rigorous requirements." Ibid.

N.J.S.A. 43:15A-43(a) provides, in pertinent part, ADRB may be obtained "if [an] employee is permanently and totally disabled as a direct result of a traumatic event occurring during and as a result of the performance of his regular or assigned duties." Our Supreme Court in Richardson, 192 N.J. at 212-13, clarified the phrase "result of a traumatic event" by establishing a five-part test a claimant seeking ADRB must satisfy. The list includes:

> 1. that [the member] is permanently and totally disabled;
>
> 2. as a direct result of a traumatic event that is

8

a. identifiable as to time and place,

b. undesigned and unexpected, and

c. caused by a circumstance external to the member (not the result of pre-existing disease that is aggravated or accelerated by the work);

3. that the traumatic event occurred during and as a result of the member's regular or assigned duties;

4. that the disability was not the result of the member's willful negligence; and

5. that the member is mentally or physically incapacitated from performing his usual or any other duty.

[Ibid.]

Prong 2(b) is at issue here. Under this prong, "a member who is injured as a direct result of an identifiable, unanticipated mishap has satisfied the traumatic event standard." Id. at 213.

In Richardson, the Court held the "undesigned and unexpected" prong requires either "an unintended external event" or "an unanticipated consequence" of an intended event that "is extraordinary or unusual in common experience." Id. at 201 (quoting Russo, 62 N.J. at 154). "Injury by ordinary work effort," when "the employee was doing [their] usual work in the usual way"

9

does not qualify. Ibid. (quoting Russo, 62 N.J. at 154). In short, "work effort itself . . . cannot be the traumatic event." Id. at 211.

The Court offered several examples of incidents that might constitute undesigned and unexpected events:

> A policeman can be shot while pursuing a suspect; a librarian can be hit by a falling bookshelf while re-shelving books; a social worker can catch her hand in the car door while transporting a child to court. Each of those examples is identifiable as to time and place; undesigned and unexpected; and not the result of pre-existing disease, aggravated or accelerated by the work. Thus, each meets the traumatic event standard. So long as those members also satisfy the remaining aspects of the statute, including total and permanent disability, they will qualify for accidental disability benefits.
>
> In sum, the fact that a member is injured while performing his ordinary duties does not disqualify him from receiving accidental disability benefits; some injuries sustained during ordinary work effort will pass muster and others will not.
>
> [Id. at 412.]

The Court emphasized the "polestar" of the inquiry was "whether, during the regular performance of [the petitioner's] job, an unexpected happening, not the result of pre-existing disease alone or in combination with the work, has occurred and directly resulted in the permanent and total disability of the member." Ibid.

10

The determination of whether an incident is undesigned and unexpected cannot be "resolved merely by reviewing the member's job description and the scope of his or her training." Mount, 233 N.J. at 427. While "those considerations may weigh strongly for or against an award of accidental disability benefits," a reviewing court "must carefully consider not only the member's job responsibilities and training, but all aspects of the event itself." Ibid.

In Mount, the Court considered the officer:

> confronted a catastrophic accident at close range. He initially viewed a victim's arm hanging from the vehicle's window. Bystanders approached the vehicle demanding that Mount rescue the occupants. With no firefighting equipment except a small fire extinguisher, Mount faced the imminent threat of an explosion. Within moments, the car burst into flames. As Mount learned minutes later, the explosion "melted" the young victims' bodies into the interior of the vehicle.
>
> [Ibid.]

The Court concluded the event was "undesigned or unexpected" although "[b]y virtue of his job description, training, and prior experience, Mount could anticipate being called to accidents that were serious or even fatal." Ibid. The Court further recognized, "As his job description suggest[ed], in some circumstances Mount would be expected to remove victims from a damaged

11

vehicle pending the arrival of medical personnel." Ibid. Nonetheless, the Court held the "traumatic event" was "undesigned and unexpected" because Mount "was not trained to combat, unassisted, an explosion of such magnitude experienced at such a close range. With no firefighting equipment or protective gear, he was helpless in the face of a terrible tragedy." Id. at 427-28.

Further, in Moran v. Board of Trustees, Police and Firemen's Retirement System, we held an undesigned and unexpected event occurred when a "combination of unusual circumstances . . . led to Moran's injury." 438 N.J. Super. 346, 354 (App. Div. 2014). In that case, Moran, a firefighter, was injured after kicking down a door to a burning building because he heard voices yelling from inside. Id. at 349-50. Moran was part of the "engine company" that brought hoses to burning buildings and not part of the "truck company" that brought equipment used to forcibly enter buildings. Id. at 349. The truck company was running late, so Moran attempted to rescue victims trapped inside the building despite not having the proper equipment. Id. at 354. We concluded Moran's injury was caused by an undesigned and unexpected event because the firefighter faced unusual circumstances, including the presence of victims inside the burning building, the truck company's delay, and the lack of equipment to break down the door. Ibid.

In the present matter, we discern no error in the Board's decision denying ADRB. Similar to the Board, we reject Tantum's contention that his injury was unexpected under Richardson because he did not anticipate the deer carcass would not budge when he attempted to move it from the roadway. Tantum's duties as a police officer included investigating animal complaints and pushing and pulling objects. Indeed, in his testimony before the ALJ, Tantum acknowledged, prior to the incident, he responded to several calls to move deer carcasses – and had moved a deer carcass with a dog leash.

The October 18, 2019 incident does not constitute unusual circumstances or anything beyond the normal course of work Tantum regularly performed as a police officer. Nor did an outside influence cause Tantum to injure his arm when pulling the carcass. Tantum's injury was caused by his ordinary, albeit strenuous, work effort, which does not qualify as a traumatic event.

Upon review, we find no basis to suggest the Board's adoption of the ALJ's findings was arbitrary, capricious, or unreasonable. The ALJ's findings, adopted by the Board, were fully supported by substantial credible evidence in the record and in accord with the governing law. We therefore decline to disturb the Board's denial of Tantum's application for ADRB. See Virtua-West, 194 N.J. at 422.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

A-1105-24